Abraham N. (teller, J.
This is a motion to dismiss the complaint pursuant to rule 106 of the Buies of Civil Practice for legal insufficiency. The complaint is based on an article containing a reference to plaintiff wife, which appeared in defendant’s newspaper.
There are four causes of action alleged in the complaint. The first and basic cause is by plaintiff wife for libel. The second cause repeats all the allegations of the first, adding a demand by her for punitive damages. The third and fourth causes are asserted derivatively by plaintiff husband, the first of these claiming damages for his humiliation and anguish *587 arising from the libel upon his wife and the last for deprivation of his wife’s services and companionship.
The article in question is referred to in the complaint as having a two-column headline entitled ‘ ‘ slain exec faced liens of 2 millions ”, with its second and third paragraphs reading as follows:
‘ ‘ As police delved into his tangled business affairs, several women described as ‘ associated ’ with Brenhouse were questioned at Hastings Police Headquarters.
“Among those questioned were Mrs. W. B. Wildstein who, with her husband, shared the second half of the two family house in which Brenhouse lived. ’ ’
The remainder of the article dealt with other phases of the matter and is not set forth in the complaint. The complaint alleges that the statement wherein plaintiff wife is asserted to have been in any way associated with Brenhouse is false. The complaint pleads an innuendo to the effect that the word “ associated ”, put in quotation marks, conveyed the meaning in this context of an association ‘ ‘ involving a lewd and adulterous relationship between the plaintiff, a married woman, as aforesaid, and the deceased ‘ slain exec ’ ”.
Since no special damages are pleaded, the court may not consider, any extrinsic facts alleged in the complaint. The cause of action can be sustained only if the article is defamatory upon its face or with the aid of legitimate innuendo (O'Connell v. Press Pub. Co., 214 N. Y. 352). A writing is defamatory and actionable without allegation or proof of special damage if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community (Mencher v. Chesley, 297 N. Y. 94).
It is the function of the court on a motion to dismiss to determine whether the publication is reasonably capable or susceptible of the libelous meaning ascribed to it; if it so holds, then the question will be for the jury at the trial to decide whether it does convey such meaning to a substantial number of the community. But if the article is not susceptible of a libelous meaning, the court must grant the motion to dismiss.
The rule as to the place of an innuendo in a libel complaint was stated in Tracy v. Newsday, Inc. (5 N Y 2d 134, 136): “ The admitted purpose of an innuendo is to explain matter that is insufficiently expressed. Its office is to point out the libelous meaning of the words used. If the article is not susceptible of a libelous meaning, then innuendo cannot make it libelous. *588 * * * The innuendo, therefore, may not enlarge upon the meaning of words so as to convey a meaning that is not expressed (Gurtler v. Union Parts Mfg. Co., 285 App. Div. 643, 644-645, affd. 1 N Y 2d 5).”
In Gurtler v. Union Parts Mfg. Co. (supra, p. 645) it was pointed out that innuendo can give to the words an actionable meaning, if such meaning can reasonably be inferred therefrom.
Examining the article complained of in the light of the aforesaid guides, it is noted that it deals with the investigation into the murder of a wealthy man involved in tangled business affairs and faced with a large lien upon his assets. To say of such a man and under such circumstances that the police questioned several women described as “ associated ” with him, might reasonably be held to convey the meaning of some meretricious association. The use of quotation marks around the word 1 ‘ associated ’ ’ might be found by a jury to indicate that an inverted meaning was intended by the writer and so understood by the average reader of that newspaper in the community, and not its normal or customary meaning. (See Irving v. Irving, 121 App. Div. 258, with reference to the use of ‘1 .suspicious quotation marks” in referring to the “ friend ” of a woman.) There was no need to impart such emphasis or imply such connotation if the purpose was merely to indicate that the police had used the word “ associated ” in describing these women. The fact, if it be so, that the writer was only quoting the word used by the police would not immunize defendant from liability if it be held that it constituted a libel; one who repeats a libel must respond in damages, even if he indicates that he is quoting another.
Here, the average reader — and a jury — might reasonably conclude that the meaning intended and conveyed was that plaintiff’s association with the murdered man was not merely that of a neighbor in a two-family house but a more intimate one, which the police hoped would bring to light leads as to his private life, business affairs, financial troubles and possible suspects. The conclusion that the association suggested or meant was an immoral one could reasonably be drawn from the following: the use of the word 11 associated ’ ’ in quotation marks; the questioning by the police only of women; the questioning of plaintiff wife only and not her husband, though he shared with her the second half of the house occupied by the murdered man (who evidently was not living there with a wife, since none was mentioned).
The standards to be applied are those current in the community among the readers of the subject newspaper. The *589 nuances of meaning ascribable to this article cannot be conclusively determined on the basis of dictionary definitions. All that is being here decided is that it is susceptible of a libelous meaning, that is, capable of conveying a meaning tending to expose plaintiff wife to aversion or to induce an evil or unsavory opinion of her. The motion to dismiss with respect to the first cause of action is therefore denied.
Since no question is raised specifically as to the separate second cause for punitive damages only, that cause is also sustained on this motion.
The third cause of action for the husband’s humiliation and anguish is dismissed. The libel was not upon him but his wife. Necessarily, there will be persons, such as husbands or close relations of a person libeled, who will feel its impact. But that is not actionable, unless it can be shown that the article was also published of and concerning them. And, if this cause be regarded as an attempt to plead a prima facie tort, it is insufficient for failure to allege special damages and other essential elements of such a cause of action.
With respect to the fourth cause of action for loss of services, although no citation of authorities as to its applicability to libel actions has been furnished the court by either counsel, it would appear that, in an appropriate case, there could be such a derivative cause of action by a husband. A libel is a personal injury (General Construction Law, § 37-a) and if that injury has resulted in a loss of the services of a wife analogous to that following a personal injury due to negligence, there would, in theory at least, be no impediment to a husband’s derivative cause of action. However, the facts necessary to establish such a cause of action have not been pleaded. The fourth cause is accordingly dismissed.