SHIBLEY *v.* TIME, INC., ET AL.

(No. 915,246—Decided May 14, 1974.)

Common Pleas Court of Cuyahoga County.

*Mr. John C. Lancione,* for plaintiff Norman W. Shibley.
*Mr. David M. King,* for intervenor Joseph Kalk.
*Mr. Harry C. Kester* and *Mr. David C. Weiner,* for defendant Playboy Enterprises, Inc.
*Mr. Ezra K. Bryan* and *Mr. Don M. Pace,* for defendants Time, Inc. and Esquire, Inc.
*Mr. George F. Karch* and *Mr. Alan R. Lepene,* for defendants Downe Publishing Inc. and Downe Communications, Inc.
*Mr. Ellis M. McKay, Mr. Robert J. Hoerner* and *Mr. Bruce J. Havighurst,* for defendant American Express Company.

FINK, J. This action comes before the court on defendants' motions to dismiss the complaint of the plaintiff and the cross-claim of the intervenor on the ground that they have failed to state a claim upon which relief can be granted.

The plaintiff's amended complaint and the intervenor's cross-claim, the material allegations of which are deemed to be true for purposes of ruling on the defendants' motions

for dismissal, in essence make the following claim: Plaintiff and members of the class which he represents have subscribed to publications or credit card privileges of defendants, and that said defendants have, without permission, sold, rented, or otherwise permitted the names of plaintiff and the members of the class he represents to be entered into commercial use or distribution to persons not in privity with the publisher whose publication was subscribed for or the credit card company with which the member of the class had a contract.

Accepting these facts as true, the court must decide whether any relief can be granted. Under Civil Rule 12 (B)(6) of the Ohio Rules of Civil Procedure, the court, after a motion under the rule by defendants must determine the sufficiency of the statement of a claim for relief on the pleadings.

Based on the above claim, the plaintiff makes the following statement in his amended complaint:

"* * * as a direct result of the wrongful sale, rental or permission of said names to be entered into commercial use or distribution, the class has suffered an invasion of privacy; and, the defendants have been unjustly enriched through such wrongful sale of plaintiff's names and addresses."

The intervenor asked to be made a defendant in order to assert a claim against the original defendants which is different from those asserted by plaintiff. Whereas plaintiff prayed that the court issue an order enjoining and prohibiting defendants from selling, renting or otherwise permitting said names to be entered into commercial use or distribution to those not in privity with the subscription or credit card contract, the intervenor asks the court to allow subscribers to make an election. In later briefs filed by the plaintiff, he also indicated that an election should be allowed. In essence, the plaintiff and intervenor came to agree that the subscriber has the right of approval or rejection before his name and address, together with the fact that he subscribed to a certain magazine or used a certain credit card can be sold, rented, or otherwise used as a com-

mercial property by the party with whom he has the contract of subscription or credit card privileges.

The relief prayed for is based on the assumption that the alleged wrongful acts committed by the defendants in this matter are an actionable invasion of privacy. Finding no authority to support the assumption that such use of a subscriber's name as a commercial property is an actionable invasion of privacy, the court finds that it cannot grant any relief on the claims made by the plaintiff and intervenor. Defendants' motions under Civ. R. 12(B)(6) are well taken and are hereby granted.

In the plaintiff's brief in opposition to defendants' motion to dismiss, plaintiff states that his complaint may not fit any of the generally recognized definitions of invasion of privacy. Plaintiff's language in the brief is as follows: *"It is true that this cause of action does not fit into the orthodox framework of the traditional invasion of right of privacy case."* (Emphasis added.) Briefs of the defendants also point out the unusual nature of plaintiff's claim. It appears that no cases have been reported which support plaintiff's claim. Here reference should be made to two reported cases concerned with the sale or transfer of lists of names and addresses without the prior consent of those whose names are on the list which fail to support plaintiff's claim of invasion of privacy.

One such case is *N. L. R. B.* v. *British Auto Parts* (D. C., C. D. Calif. 1967), 266 F. Supp. 368. This case deals with the N. L. R. B.'s election rule applicable to consent elections, called the *Excelsior* rule. Under this rule an em-ployer is required to file with the board's regional director a list of the names and addresses of all employees eligible to vote in a representation election. The regional director is then to make the list available to all parties to the representation proceeding. The defendant contended that the *Excelsior* rule was unconstitutional as violative of the employees' rights to free association and privacy. In regard to this contention the court said at page 373:

"* * * it is clear that no such rights are invaded by the *Excelsior* rule * * *. With respect to the employees' 'right

to privacy,' as the Supreme Court pointed out in *Martin* v. *City of Struthers*, 319 U. S. 141, 143-149, 68 S. Ct. 862, 87 L. Ed. 1313, 1317-1320 (1943), those who do not welcome visits to their homes are free to turn the visitors away and will have the protection of the law in doing so.''

It is clear that the court only gave consideration to the possibility of unwanted solicitation by union organizers in workers' homes, resulting from making employees' names and addresses available to the union, as a possible invasion of privacy. Apparently the court did not feel that any comment was necessary regarding the notion that simply compiling a list of employees' names and addresses and making the list available to others might be an invasion of privacy in itself.

Another such case is *Lamont* v. *Commissioner of Motor Vehicles* (D. C., S. D. N. Y. 1967), 269 F. Supp. 880, affirmed, 386 F. 2d 449. In this case, plaintiff alleged that he, and others like him, who are compelled to register their motor vehicles with the defendant, suffered invasion of privacy as a result of defendant's actions under a state statute. The statute authorizes the defendant to allow third persons to compile a list of the registrants which can be sold, leased or used by the third person. The lists were used for solicitation through the mails, by telephone, and in person, of those on the list for purchase of merchandise. The court, at page 884, said this about plaintiff's claim:

''* * * plaintiff proposes to stretch the constitutional dimensions of 'privacy' far beyond any reasonably foreseeable limits the court ought to enforce. His claim is in an area where there is no invidious discrimination, no problem of a wrong unreachable at the polls, no suggestion of an affliction confined to a relatively helpless minority.

The court found that plaintiff's contentions were ''plainly unsubstantial'' and the complaint was dismissed.

The tort of invasion of privacy is defined in Ohio, as follows:

''An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which

the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Housh* v. *Peth* (1956), 165 Ohio St. 35, 133 N. E. 2d 340.

Dean Prosser in his Handbook of The Law of Torts (4 Ed., 1971), Section 117, states that invasion of the right of privacy is not a single tort but consists of four distinct torts. These four forms of invasion of privacy, which are based on different elements, are:

(1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;

(2) Public disclosure of embarrasing private facts about the plaintiff;

(3) Publicity which places the plaintiff in a false light in the public eye; and

(4) Appropriation, for defendant's advantage, of plaintiff's name or likeness.

By plaintiff's admission his claim does not fit into any of the above definitions. Plaintiff is also not supported by any reported cases. Dean Prosser adds support to defendants when, at page 816, in discussing possible expansion of the law regarding invasion of privacy, he states:

"* * * Thus far no such expansion has occurred; and there is as yet no decided case allowing recovery which does not fall fairly within one of the four categories with which the courts have thus far been concerned."

As defendants have pointed out, plaintiff and intervenor should look for relief to the legislative branch. The General Assembly has acted in the area of sales of names and addresses to direct mail advertisers in two instances. One concerns the sale by the state of Ohio of names and addresses of registrants of motor vehicles. Another concerns the regulation of the use and transfer of computerized personal data. Because of the General Assembly's activity in this area, the court feels it would be appropriate for the plaintiff and intervenor to seek relief from that branch.

The founders of our nation constitutionally set up a government composed of three branches—the legislative,

executive and judicial. It is improper for one to invade the province of the other. This is a case peculiarly within the province of the legislative branch and it would be improper for the judicial branch to usurp the legislative function. The judicial branch may interpret the laws enacted by the legislative branch but it may not legislate, and that is what would be required if the plaintiff is to succeed here.

R. C. 4503.26 authorizes the sale of lists of names and addresses of registrants of motor vehicles. In authorizing such sales the Legislature impliedly indicates that sales of lists of names and addresses are not an invasion of the right of privacy. As was pointed out in the New York case, *Lamont* v. *Commissioner of Motor Vehicles, supra*, such a statute is not subject to attack as being unconstitutional. House Bill No. 1056 introduced by Mr. P. Sweeney in January of this year to repeal R. C. 4503.26 only affirms defendants' contention that the legislative branch should make decisions in this area.

Also directly related to the issues presented by the plaintiff and intervenor is another bill proposed in the General Assembly. State Senator Stanley J. Aronoff has introduced legislation to amend R. C. 1345.99 and to enact R. C. 1345.31 to 1345.40 to regulate the use and transfer of computerized data (Senate Bill 418). This legislation, if enacted would prohibit the transfer of personal data collected and stored in computer accessible files without prior informed consent of the individual to whom the data pertains.

Plaintiff's claim for restitution for unjust enrichment must fail. The law does not recognize that defendants' conduct violated plaintiff's right of privacy. Plaintiff does not base his right to restitution for unjust enrichment on any other theory. Once again the court refers to plaintiff's amended complaint:

"Plaintiff says that as a direct result of the wrongful sale * * * the class has suffered an invasion of privacy; and, the defendants have been unjustly enriched through such wrongful sale of plaintiff's names and addresses."

Since the sales by defendants are not wrongful there has been no unjust enrichment.

Ours is a nation of laws and not of men. This court happens to sympathize with the position of the plaintiffs, but just as each citizen must obey the law as it exists, whether or not he agrees with it, so must the court follow the law as it is and not as the court would wish it to be. Therefore, since the law as it now exists prevents the plaintiff from succeeding, for the reasons stated above the court must find that as the law now is the plaintiff has failed to state a claim on which relief can be granted.

The next question to be determined is whether or not this is a proper class action.

Civil Rule 23 states the *requirements* for a valid class action. All of the four parts of Rule 23(A) *must* be met, as well as one of the requirements under Rule (B) (as to which plaintiff alleges that his case falls within 23(B)(1), which the complaint quotes verbatim).

Rule 23 states, in pertinent part:

"(A) Prerequisites to a class action.

"One or more members of a class may sue or be sued as representative parties on behalf of all *only if* (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, *and* (4) the representative parties will fairly and adequately protect the interests of the class.

"(B) Class actions maintainable.

"An action may be maintained as a class action *if* the prerequisites of subdivision (A) are satisfied, *and in addition*:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

"(b) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interest of the other members not parties to the adjudications or substantially impair or impede their ability

58

to protect their interests * * *." (Emphasis added.)

This case is not a proper class action, for each of *three* separate reasons:

1. In several respects plaintiff's claim is not "typical" of the claims of other members of the asserted class—as it *must* be under Rule 23(A)(3).

2. Plaintiff cannot adequately represent the asserted class, for his interest is far from "coextensive" with that of other class members, which is the established requirement for complying with Rule 23(A)(4).

3. The case is demonstrably not one which comes within Rule 23(B)(1)—which is the subdivision of 23(B) which plaintiff specifically alleges—because individual members of the asserted class do not have the complete identity of interest required for a valid 23(B)(1) action and because this is not the sort of action contemplated by 23(B) (1).

A. Plaintiff's Claim is Not Typical of the Claims of the Alleged Class Member as Required by Rule 23(A)(3).

It is fundamental doctrine that the named plaintiff's claim must be typical of those of the proposed class. Only then will plaintiff's stake in the action be coextensive with those he wishes to represent. A class action cannot be maintained if the plaintiff's claim involves peculiar or unusual facts or circumstances, because individual questions affecting only the named plaintiff would distort the entire controversy and defeat the coextensiveness of claims required by the Rule.

Federal courts have barred the maintenance of purported class actions where named plaintiffs had a typical claim. *Maynard, Merel & Co.* v. *Carcioppolo* (S. D. N. Y. 1970), 51 F. R. D. 273; *Syna* v. *Diners Club* (S. D. Fla. 1970), 49 F. R. D. 119; *Reinisch* v. *New York Stock Exchange* (S. D. N. Y. 1971), 52 F. R. D. 561. Since Ohio Civil Rule 23 is in this respect identical to Rule 23 of the Federal Rules of Civil Procedure, and was designed to adopt federal class action principles, federal decisions interpreting the Rule are highly persuasive.

Unlike the situation where all plaintiffs can be

reasonably assumed to have an identity of interest, the present case involves a wide range of possible reactions to receipt of direct mail and to making names and addresses available for this purpose.

" * * * the right of privacy alleged to be violated in the Complaint is, in law and in fact, a private and personal right, to be asserted or waived by the party entitled to assert or waive such right, and not such a right as may be asserted or waived on his behalf by others * * *." Paragraph two, answer of intervenor Kalk.

A privacy claim is a peculiarly personal one. "The right of privacy is not a property right, but rather an incident personal in its nature * * *." *Martin* v. *F. I. V. Theatre Co.* (Common Pleas, Cuyahoga County, 1936), 1 Ohio Supp. 19, 26 Ohio Law Abs. 67, cited with approval in *Housh* v. *Peth* (1955), 99 Ohio App. 485, 490, 135 N. E. 2d 440, 445, affirmed, 165 Ohio St. 35, *supra*. It cannot be asserted by a family member, it cannot be assigned, and it does not survive death. *Young* v. *That Was The Week That Was* (N. D. Ohio 1969), 312 F. Supp. 1337, affirmed, 423 F. 2d 265 (C. A. 6, 1970).

Significantly, the legislative history from Section 3008, Title 39, U. S. Code, shows that in enacting that statute the Congress was particularly concerned with the rights of the mailer and the willing recipient. The report of the Committee on Post Office and Civil Service, Senate Report No. 801, states:

"The committee believes that the House provision has struck *a proper balance* between an individual citizen's right to privacy in his home or other place of abode and *the right of a citizen to utilize the U. S. mail for the expression of his ideas or for any other lawful purpose* * * *.

"Under the provisions contained in title III, the individual citizen is made the sole judge of whether any advertisement he receives is a pandering advertisement. * * * *The provision does not and is not intended to prohibit such materials from being sent through the mails, if the individual to whom it is addressed wishes to receive it. If the recipient does not want to receive such matter, the*

provision provides him with the means to close the doors. of his home or other place of abode to it." 2 U. S. Code Cong. and Adm. News 2294-2295, 90th Cong., 1st Sess. (1967). (Emphasis added.)

That plaintiff's claim is not typical is clearly shown by the petition of intervenor Joseph Kalk. Mr. Kalk questions plaintiff's representation, claiming that "a large portion, if not a majority" of the purported class welcomes unsolicited mail and supports the sale of mailing lists. This claim by the intervenor is unquestionably sound as is shown by the result of the National Consumer Survey conducted on behalf of the Direct Mail Advertising Association in 1964, the experience with the minimal interest in the delisting service, and, indeed, by the many requests received by the Association that names be *placed* on mailing lists. The following observations by the court in *Chapin* v. *Tynan, Commissioner of Motor Vehicles,* Civil No. 150994, Superior Court, Hartford, Connecticut, April 25, 1968, affirmed *per curiam,* 158 Conn. 625, 264 A. 2d 566 (1969), further prove the point:

"It is noted that Congress recently passed legislation relative to prohibition of pandering advertisements in the mails. Public Law, 90-206, 90th Congress, December 16, 1967.

"However, no such hue and cry seems to have pervaded the halls of our legislature. A reading of the minutes of a legislative committee hearing on April 1, 1965 relative to Bill No. 3604 entitled 'An Act Concerning the Prohibition of the State or State Agencies from Selling Lists of Names' reveals complete opposition by representatives of various interests determined to perpetuate the present system. Nobody appeared in support of the measure, certainly affording some justification for the legislature's retaining section 14-49(r) on the statute books."

Intervenor Kalk's position is not just a slight variation of plaintiff Shibley's; he wholly opposes the relief Shibley seeks for the class. The fact that two lawyers asserting diametrically opposed positions are vying for representa-

tive status emphasizes that *there is no "typical" class position.*

Plaintiff Shibley is also not typical of the purported class because he is a prominent lawyer, a partner in a distinguished law firm, president of the Greater Cleveland Bar Association, and a public figure. It is hornbook law that public figures have a much weaker basis for privacy claims than average citizens. See Prosser, Torts (4 Ed.), 823-830, Section 118.

B. Plaintiff Shibley Cannot Adequately Represent the Interests of the Class as a Whole as Required by Rule 23(A)(4).

(i) Many of the same considerations discussed above demonstrate the inability of either plaintiff or intervenor Kalk to represent the purported class. To "fairly and adequately protect the interest of the class" plaintiff's interests must be *coextensive* with those of the entire class. 3B Moore, Federal Practice (2 Ed.), Paragraph 23.07[2]. We therefore cannot possibly represent those cardholders who, like intervenor Kalk, affirmatively desire direct mail. And vice versa. Moore, *supra*, states, at paragraph 23.07 [3]:

"In order for a party adequately to represent a class * * * his interests must be *wholly compatible with and not antagonistic to* those whom he would represent." (Emphasis added.)

(ii) There is a second and independent reason why the representation by either the plaintiff or the intervenor would be inadequate. The complaint shows that plaintiff's own law firm has brought the action on behalf of a member of the firm. The same is true as to intervenor Kalk. In a class action an application for attorneys' fees may be made. It is therefore essential that a plaintiff purporting to represent a class have no interest in sharing in the recovery of attorneys' fees. The courts have made clear that though the capability and integrity of the individuals involved be of the highest order, the representative's principal concern must be a recovery to be shared by the class, and not in the award of attorneys' fees shared by the plain-

tiff and other members of the plaintiff's law firm. The theory is, in part, that a plaintiff with a stake in possible fees may be unable to decide objectively upon the prosecution of the case or the settlement thereof, thereby causing inadquate representation of the entire class. See, generally, *Shields* v. *First National Bank of Arizona* (D. Ariz. 1972), 56 F. R. D. 442, 444; *City and County of Denver* v. *American Oil Co.* (D. Colo. 1971), 53 F. R. D. 620; *Buford* v. *American Finance Co.* (N. D. Ga. 1971), 333 F. Supp. 1243; *Barkman* v. *Sinclair Oil Corp.*, Con. Civil Actions Nos. 69 C 2055, 29 C 2320, N. D. Ill., E. Div, March 8, 1973.

*Cotchett* v. *Avis Rent A Car System* (S. D. N. Y. 1972), 56 F. R. D. 549, like the present case, involved a large class action with minimal possible recovery to any individual plaintiff. As here, plaintiff's law firm sought to represent the class. The court, at page 554, said:

"The difficulty I have with this situation lies in the fact that the possible recovery of Mr. Cotchett as a member of the class is far exceeded by the financial interest Mr. Cotchett might have in the legal fees engendered by this lawsuit. The propriety of this arrangement is cast further into doubt by the consideration that the individual members of the class are unlikely to receive any significant personal benefit from a successful prosecution of this suit and, indeed, may ultimately have to pay for it through subsequently increased costs of car rental.

"* * * This problem is one of concern to the entire legal profession, and more so than judicial opinions and scholarly comments thus far have indicated." Cf. *Gerlach* v. *Allstate Insurance Co.* (S. D. Fla. 1972), 338 F. Supp. 642, 646.

Only the plaintiff or the intervenor, with a stake in the fees, could hope to profit appreciably. See Handler; The Shift from Substantive to Procedural Innovation in Antitrust Suits, 71 Col. L. Rev. 1, 9 (1971).

Moreover, the problem presented goes beyond the issue of attorney's fees, and would indeed be insurmountable even if fees were never sought.

*Kriger* v. *European Health Spa* (E. D. Wis. 1972), 56 F. R. D. 104, was a truth-in-lending case involving a plaintiff represented by his own law firm. The court discussed the issue involved here thoroughly, at pages 105-106, stating:

"*\* \* \* The plaintiff, as an attorney associated with the firm representing him in this action, cannot, in law, 'fairly and adequately protect the interests of the class.'*

"All parties agree that a burdensome ethical question would be raised if the plaintiff were to be called as a witness while his firm is employed in the matter. The plaintiff responds that he can pursue the matter without testifying, or, if he should be required to testify, his employers can withdraw as counsel. I find the latter solution unsatisfactory. A person wishing to represent a class must be able to demonstrate 'the forthrightness and vigor . . . which the representative party can be expected to assert.' *Mersay* v. *First Republic Corp.* (S. D. N. Y. 1968), 43 F. R. D. 465, 470. This plaintiff has commenced an action under a disability that no other member of the class is likely to have—an inability to testify except on the cost of withdrawal of counsel familiar with the case from its inception. It is not enough to say that his testimony may not be needed; the possibility of such a need makes him less capable of adequate representation than others in the class." (Emphasis added.)

This is *not* a challenge of the capability or integrity of plaintiff or intervenor or their law firms. The point is simply that both plaintiff and intervenor have an inherent disability. Each is represented by his own law firm. The courts now consistently hold this to be a fatal impairment of the required interest "coextensive" with the interests of the entire class to enable fair and adequate representation of the class.

For the foregoing reasons the requirements of 23(A) (4) cannot be met here.

C. The Proposed Class Does Not Satisfy the Stringent Requirements of Rule 23(B)(1).

Plaintiff has alleged verbatim the language of Rule

23(B)(1) as the category of 23(B) within which this case falls. But 23(B)(1) is plainly inapplicable here.

    i. 23(B)(1)(a) was designed for situations where the defendant is obliged by law to treat everyone alike, or must do so as a practical necessity. See Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 388 (1967). The examples given are utilities serving customers, a government levying a tax, and a riparian owner using water as against downriver owners. In the present case, however, providing various plaintiffs wtih different treatment is no hardship to defendant.

    ii. 23(B)(1)(a) simply protects the party opposing a class against inconsistent adjudications establishing incompatible standards of conduct for it. The authorities agree that for this reason an action for money damages does not qualify under 23(B)(1). *Ratner* v. *Chemical Bank New York Trust Co.* (S. D. N. Y. 1972), 54 F. R. D. 412, 415 n. 5; See 7A Wright & Miller, Federal Practice and Procedure, 8, Section 1773.

    This court has great personal respect, admiration, esteem and affection for the integrity and competency of the plaintiffs in this action and for counsel for both the plaintiff and the intervenor. The comments stated above with respect to the legal implications involved in this case are not meant as any disrespect personally to the individuals involved, for in this instance quite the reverse is true; but rather to objectively cover the points of law that are required in discussing the legal issues in this lawsuit, and arrive at those decisions that the law requires, regardless of the personalities involved or the personal feelings of the court.

    For all the reasons stated herein, this case fails to comply with the class requirements of Rule 23, and, therefore, the court cannot certify the plaintiff or the intervenor as representative of the class as requested under the law as it now is.