LAMBERT ET AL., APPELLANTS, *v.* GARLO, CORONER, ET AL., APPELLEES.

(No. 13-83-3—Decided January 22, 1985.)

*Levin & Levin Co., L.P.A., Dennis P. Levin* and *Jack M. Levin,* for appellants.

*Steve C. Shuff,* prosecuting attorney, and *Elaine J. Knutson,* special assistant prosecuting attorney, for appellee Olgierd Casimir Garlo, Seneca County Coroner.

*Tomb & Hering, James S. Nordholt,*

*Jr., Cox & Vassar* and *C. David Cox, Jr.,* for appellee Olgierd Casimir Garlo, individually.

*Guernsey & Guernsey* and *James D. Guernsey,* for appellees Fostoria Daily Review Company and Karen Scherger.

MILLER, P.J. This is an appeal by plaintiffs from a judgment of the Court of Common Pleas of Seneca County granting summary judgment in favor of defendants.

The case originated upon plaintiffs' complaint, filed November 10, 1981, wherein it was alleged that the good names of plaintiffs had been defamed by a statement concerning plaintiffs' deceased son and brother, which statement was made by defendant Garlo, reported by defendant Karen Scherger and printed by defendant Fostoria Daily Review Company. The alleged defamatory article appeared in an edition of The Fostoria Review Times and consisted of the statement of Garlo, the Coroner of Seneca County, that "It's as clear as day to me that this was a pusher."

In granting the summary judgment, the court below specifically found that:

"Plaintiffs have no cause of action for which they are entitled to relief;

"Plaintiffs have failed to state a claim upon which relief can be granted; Olgierd Casimir Garlo has no liability individually for any acts alleged by plaintiffs;

"Olgierd Casimir Garlo as Coroner of Seneca County enjoys judicial immunity from suit for statements made in the course of his investigation; and Fostoria Daily Review Co. and Karen Scherger enjoy privilege from suit for reporting statements of the coroner made regarding his investigations."

We first note that, while defendants moved for summary judgment and the court below considered evidentiary matters in addition to the pleadings as is clearly permissible under Civ. R. 56(C), the language in the above journal entry

is more closely attuned to the granting of a motion to dismiss under Civ. R. 12(B)(6). However, since the parties raise no issue in regard thereto in this appeal, we will treat the journal entry as rendering summary judgment for defendants.

In *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66 [8 O.O.3d 73], the court stated:

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."

The trial court in the instant case did not recite in its journal entry that such a demonstration had been made. However, if plaintiffs did fail to state a claim upon which relief could be granted, then, under the summary judgment rule and under the provisions of *Harless, supra,* any issues of fact that might exist would not be *material* to the case, reasonable minds could reach no other conclusion than that plaintiffs had no cause of action entitling them to relief and defendants would be entitled to judgment as a matter of law.

Plaintiffs make one two-part assignment of error in this appeal:

"The trial court erred in granting summary judgment in favor of the defendant-Appellantees [*sic*] and dismissing plaintiff-Appellants' action.

"I. Appeallants' [*sic*] complaint stated a cause of action against appellees.

"II. Appellees' statements were not privileged and thus were not immune from prosecution."

It is plaintiffs' contention that their action did not seek recovery for the

defamation of their decedent, but, instead, was for injuries *suffered directly* by them. Plaintiffs claim that they are entitled to relief under the alternative legal theories of defamation, intentional or negligent infliction of emotional distress and invasion of privacy.

First of all, with respect to an action for defamation, it has been stated, as a general rule, that:

"* * * A libel or slander upon the memory of a deceased person which does not directly reflect upon the deceased's relatives, or upon his former associates, gives such relatives or associates no cause of action in their own right upon the ground that the defamation tended to subject them to ridicule or contempt. * * *" 35 Ohio Jurisprudence 3d (1982) 533-534, Defamation and Privacy, Section 96.

It has also been stated that:

"One who publishes defamatory matter concerning a deceased person is not liable either to the estate of the person or to his descendants or relatives." 3 Restatement of the Law 2d, Torts (1977) 158, Section 560. See, also, generally, Annotation (1943), 146 A.L.R. 739; Annotation (1941), 132 A.L.R. 891.

In the instant case, plaintiffs alleged in their complaint that they were directly defamed. However, plaintiffs were not named in the article, no reference, directly or indirectly, was made concerning them or linking them to the situation and the only reasonable conclusion is that plaintiffs were not directly injured by the statements.

Necessarily, when a deceased person is libelled, there will be persons such as parents or close relatives of the person libelled who will feel its impact. However, to be actionable it must be shown that the libel was published about or concerning them, see *Wildstein* v. *New York Post Corp.* (1963), 40 Misc. 2d 586, 243 N.Y.Supp.2d 386, affirmed (1965), 261 N.Y.Supp.2d 254, or that defendant had the intention of injuring

the relative and was aware of the relative's relationship to the person defamed. See, also, 50 American Jurisprudence 2d (1970) 834, Libel and Slander, Section 311.

In this case, the evidence clearly indicates, as noted above, that the article did not concern the plaintiffs directly. There is also in the record of this case evidence in the form of affidavits indicating that the defendants never knew the decedent or the plaintiffs, or of the relationship between them prior to the publication and that there was no malice on the part of defendants toward plaintiffs.

Plaintiffs contend alternatively that, in their complaint, they stated a claim for invasion of the right of privacy.

A privacy claim is a peculiarly personal one. "The right of privacy is not a property right, but rather an incident personal in its nature * * *." *Martin* v. *F.I.Y. Theatre Co.* (C.P. 1938), 26 Ohio Law Abs. 67, headnote two, cited with approval in *Housh* v. *Peth* (1955), 99 Ohio App. 485, 490 [59 O.O. 330], affirmed (1956), 165 Ohio St. 35 [59 O.O. 60]; also cited in *Shibley* v. *Time, Inc.* (C.P. 1974), 40 Ohio Misc. 51, 59.

In the case of *Young* v. *That Was The Week That Was* (N.D. Ohio 1969), 312 F. Supp. 1337, affirmed (C.A.6, 1970), 423 F. 2d 265, wherein Ohio law controlled, it was stated, at 1341, that:

"* * * [It is a] general proposition that the right of privacy is personal and can only be asserted by the individual whose privacy has been invaded. It dies with him and cannot be claimed by his estate. Neither can it be asserted by the anguished or outraged relatives and friends of the subject individual, who may have been disturbed by the disclosure or exploitation.

" 'It is settled that the right of privacy is personal and does not extend to members of the family unless they are brought into unjustifiable publicity, here not alleged, and then the right is in

them. * * *' Santiesteban v. Goodyear Tire & Rubber Co., 306 F.2d 9 (5th Cir. 1962).

"* * *

"As we have noted above, the right of privacy is personal and may only be asserted by the individual whose privacy is invaded. In the instant case, none of the plaintiffs was himself publicized. The only name mentioned in the course of the defendants' television comment was the name of Katherine Young [plaintiffs' deceased ancestor]. None of the plaintiffs was identified in the telecast.

"Under such circumstances, the cases hold, with almost complete uniformity, that the plaintiffs have not stated a claim for invasion of their own privacy. * * *

"To sustain an action for invasion of privacy based on the publication of a person's private affairs, one necessary element is the identification of the plaintiff in the publication. If the plaintiff cannot be identified as the person who is the subject of the publication *from the published matter itself,* then there has been no actionable invasion of the right of privacy. * * *" (Emphasis *sic.*)

Plaintiffs further maintain that their complaint contained a claim for intentional or negligent infliction of serious emotional distress.

In *Housh* v. *Peth* (1956), 165 Ohio St. 35 [59 O.O. 60], the second paragraph of the syllabus states that:

"An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

In *Strutner* v. *Dispatch Printing Co.* (1982), 2 Ohio App. 3d 377, 381, the court, in affirming a judgment of the trial court granting summary judgment

for the defendant publishers, stated that "* * * anguish, humiliation, embarrassment or shame * * * cannot give rise to a cause of action unless the publicity is unreasonable and involves a matter not of legitimate concern to the public. * * *"

In *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, the syllabus provides:

"One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (*Bartow* v. *Smith,* 149 Ohio St. 301 [37 O.O. 10], overruled.)"

At pages 374-375 of the opinion of the *Yeager* case, the court quotes from 1 Restatement of the Law 2d, Torts (1965) 72, 73, Section 46, Comment *d,* as follows:

" '* * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. * * *

" 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. * * *' "

Here the matters properly before the trial court on the motion for sum-

mary judgment were the pleadings together with the affidavit of defendant Karen Scherger, the affidavits of the president and editor of The Fostoria Review Times, and the affidavit of defendant Olgierd Garlo.

The affidavits of defendant Scherger and the president and editor of The Fostoria Review Times state that neither they nor any member of the staff of The Fostoria Review Times knew either the plaintiffs or plaintiffs' decedent prior to the reported accident, that they bore no malice toward plaintiffs, and that they only published the proceedings and statements of the coroner in connection with a report of the accident.

The affidavit of defendant Garlo, who made the statement, states:

"* * * I am the duly elected Coroner of Seneca County, Ohio. I was summoned to the scene of an accident on State Route 12, Seneca County, Ohio on 4-5-81. Prior to that night, I did not know Howard K. Lambert or his parents or sister. I did not bear any malice toward them. Any reported statements made by me were made concerning my investigation of the deaths and my decision concerning an autopsy."

None of said affidavits is refuted.

We conclude that the publication by The Fostoria Review Times, under the provisions of *Strutner* v. *Dispatch Printing Co., supra,* was not unreasonable nor was it a matter not of legitimate concern to the public, but, in any event, the statement and the conditions surrounding its publication did not rise to the requirement of extreme or outrageous conduct committed intentionally or recklessly as required by *Yeager* v. *Local Union 20, supra,* and that the trial court could so find as a matter of law.

We further conclude that there being no genuine issue of material fact, there was no prejudicial error of the trial court in granting summary judgment.

Having so concluded, we find the second part of plaintiffs' assignment of error of no impact on this appeal and, therefore, not well-taken.

Finding no error of the trial court prejudicial to plaintiffs as assigned and argued, we affirm the trial court's judgment.

*Judgment affirmed.*

COLE and WHITESIDE, JJ., concur.

WHITESIDE, J., of the Tenth Appellate District, sitting by assignment in the Third Appellate District.