**Earl V. HARTWIG, et al., Plaintiffs,**

v.

**NATIONAL BROADCASTING CO., Defendant.**

No. 1:92 CV 0063.

United States District Court,
N.D. Ohio,
Eastern Division.

July 18, 1994.

John J. Lynch, III, Vandeveer Garzia, Birmingham, MI, Kreig J. Brusnahan, Cleveland, OH, for plaintiffs.

Loretta Hagopian Garrison, David L. Marburger, Louis A. Columbo, Baker & Hostetler, Cleveland, OH, Bruce W. Sanford, Baker & Hostetler, Washington, DC, Anne H. Egerton, National Broadcasting Co., Burbank, CA, for defendant.

## MEMORANDUM OF OPINION

WELLS, District Judge.

### I. INTRODUCTION

In December, 1991, Plaintiffs Earl V. Hartwig, Evelyn S. Hartwig, Kathleen Hartwig Kubucina, and Cynthia Werthmuller filed suit against National Broadcasting Company ("NBC") in Cuyahoga County Common Pleas Court in Cleveland, Ohio. Plaintiffs are immediate family members of Clayton Hartwig, a Navy sailor killed in an explosion on the U.S.S. Iowa ("Iowa") on April 19, 1989.

Plaintiffs claim intentional infliction of emotional distress by NBC in news coverage of the Iowa explosion on May 24 and 25, and July 18, 1989 and a statement by NBC Pentagon Correspondent Fred Francis ("Francis") published in USA Today on October 22, 1991. Plaintiffs allege that NBC reported that Clayton Hartwig purposefully caused the Iowa explosion to commit suicide. They complain NBC implied Clayton Hartwig was homosexual.

Plaintiffs also claim NBC publicized the following false information: 1) a May 24, 1989, NBC report that the "Hartwig family" informed NBC news that Clayton Hartwig threatened suicide at age 17 when a relationship ended; 2) a July 18, 1989, NBC report that Clayton Hartwig's shipmate, David Smith, saw a bomb timer in Clayton Hartwig's locker; and, 3) an October 22, 1989, USA Today interview in which Francis stated that the United States Navy "still believes" Clayton Hartwig caused the Iowa explosion. Plaintiffs request $25,000 in compensatory and $10,000,000 in punitive damages from NBC.

NBC removed the case to the United States District Court for the Northern District of Ohio where the case was assigned to Judge Alvin I. Krenzler. Following Judge Krenzler's retirement, the case was supervised by Chief Judge Thomas D. Lambros. The case was transferred to the docket of Judge Lesley Brooks Wells in February, 1994.

In a September 28, 1992 Order (Docket No. 20), Judge Lambros denied NBC's Motion to Dismiss. Judge Lambros explained that issues raised in NBC's Motion to Dismiss would be more appropriately addressed in a summary judgment motion. In November, 1992, NBC filed a Motion for Summary Judgment with a number of attachments (Docket Nos. 22, 29, 24, and 25). Plaintiffs filed a response and a number of exhibits (Docket Nos. 30 and 31). A reply by NBC (Docket No. 34) followed.

The Court has considered the legal arguments, affidavits, and exhibits presented by both parties. As a matter of law, Plaintiffs have shown neither serious emotional distress nor extreme and outrageous conduct by NBC. Because Plaintiffs have failed to provide legally sufficient evidence on two elements of an intentional infliction of emotional distress claim, summary judgment is granted for NBC.

### II. FACTS

Many of the facts in this case are undisputed. On May 24, 1989, NBC aired a story about the Iowa explosion which killed 47 sailors, including Clayton Hartwig. During

the report, Pentagon Correspondent Francis explained:

One official with intimate knowledge of this explosion which killed the forty-seven men said, quote, "No way was this an accident." The entire investigative effort today is focussed on two men: 24–year–old gunner's mate Clayton Hartwig, who died in Turret Two, and 21–year–old gunner's mate Kendall Truitt who was one of the survivors. The Navy sources said there was a special relationship between the two men that had gone sour six months earlier.

Truitt worked deep in the bowels of the ship in the powder magazine room. His job was to send the heavy bags of gunpowder to the turret. Hartwig worked next to the big gun. Part of his job was to insert a chemically-treated burlap patch between the first and second bags of powder before they were rammed into the gun. The patch is designed to clean the barrel during firing. Investigators suspect that the patch carried some sort of detonating device. Investigators say the explosion occurred deep inside the gun barrel between powder bags one and two, that Hartwig was the last man to touch those bags and his body bore the brunt of the blast.

Hartwig's family told NBC news that he was depressed when the relationship between the two men broke down last year. The family also said that at age 17 Hartwig threatened suicide when another relationship ended.

Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Response") at Exhibit ("Ex.") A; Defendant's Appendix in Support of Summary Judgment ("Appendix") at Ex. 1. Plaintiffs claim that none of Clayton Hartwig's relatives ever stated that he previously attempted suicide when another relationship ended. Response at p. 3 & Ex. H, I, and J.

A second report which aired on May 25, 1989 explained:

Navy sources say three investigative theories are being pursued: that Hartwig committed suicide because he was despondent over Truitt's marriage, that Hartwig killed himself and hoped the explosion would kill Truitt, that Truitt engineered the explosion to collect insurance money. Hartwig's mother believes none of that.

MRS. HARTWIG: They were friends. They had their disagreements just like anybody else would. They'd get mad at each other and make up. But I don't think any, any madness would ever, would ever constitute murder or suicide.

FRANCIS: Federal agents are examining all the remaining debris from the explosion, seeking pieces of a small detonating device which could have touched off the blast. And, NBC News has been told, the FBI is examining a great many letters written by Clayton Hartwig in an attempt to create a psychological profile of the man.

Today, Bryant Hoover, a close friend of Hartwig's, who did not want his face shown, said he had been questioned extensively by federal agents. Sources say Hartwig wrote him a thousand letters over four years, sent him money for college and confided in him.

The Navy Investigative Service and the FBI are going through all of Hartwig's possessions and his financial transactions. And, sources tell NBC News, federal agents intend to widen their investigation of gunner's mate Kendall Truitt.

Response at Ex. A; Appendix at Ex. 2.

A third report on July 18, 1989 stated:

FRED FRANCIS: the Navy has ruled out mechanical malfunction, accidental detonations, electrical flaws, and all other technical reasons for the tragedy. But, Navy sources tell NBC news that criminal investigators, with assistance from the FBI, make, quote, "a compelling circumstantial case" that the horrific explosion was an act of suicide. An FBI psychological profile of gunner's mate Clayton Hartwig and 228 exhibits convince investigators that Hartwig was a "troubled" homosexual who took his own life. One of those exhibits is a three-hour videotaped statement from an Iowa sailor, David Smith. What follows are portions of a transcript of Smith's statement about his friendship with Hartwig and the explosion.

DAVID SMITH: part of me can see him doing it.

AGENT: Tell me why you think that.

SMITH: Just for the fact that we did talk about it. You know, once we ...

AGENT: Talked about what?

SMITH: Explosions. All that kind of stuff, in the turret. How to set off the powder. All that kind of stuff.

FRANCIS: Smith said the two men were talking in a passageway when Hartwig explained that he could use a nine-volt battery and some kind of electrical ignition switch and a small timer to set off a bomb.

AGENT: He could place a bomb in a turret and ...?

SMITH: Sink the whole ship.

FRANCIS: Smith said Hartwig took him to his locker and showed him a timer.

SMITH: It was a dark color. It had numbers like 1, 2, 3 ... It had a start and a stop and a reset button.

Response at Ex. A; Appendix at Ex. 3.

The David Smith ("Smith") quotations in this report were taken from a May 28, 1989 statement. NBC did not include Smith's revised testimony (given to Naval Investigators on May 31 and June 1, 1989) in the July 18, 1989 broadcast. Smith's revised testimony indicated that Clayton Hartwig did not show him a timer in his locker. However, Smith did not recant prior testimony that he and Clayton Hartwig discussed Hartwig's prior experimentation with explosives. Declaration at Ex. I; Response at Ex. D. Plaintiffs do not provide any evidence to rebut Francis' assertion that he did not learn of Smith's revised testimony until September, 1989. Declaration of Fred Francis ("Declaration") (Docket No. 24) at p. 5.

NBC does not dispute Plaintiffs' allegations that on October 17, 1991, Chief of Naval Operations Admiral Frank Kelso stated that the exact cause of the Iowa explosion could not be determined. Nonetheless, in an October 22, 1991 *USA Today* interview, Francis "said the Navy, despite its apology Thursday, 'still believes' Hartwig caused the blast."

Plaintiffs do not proffer evidence to contest Francis' assertion that reports on the Iowa investigation were based on information from government sources. Declaration at 2. NBC attaches copies of naval memoranda and reports suggesting that Hartwig purposefully caused the Iowa explosion. Declaration at Ex. C, D, E, F, G, and H.

## III. ANALYSIS

NBC filed a motion for summary judgment on several grounds. NBC's most convincing argument concerns Plaintiffs failure of proof on every element of an intentional infliction of emotional distress claim. NBC also argues Plaintiffs' claim of intentional infliction of emotion distress is an attempt to disguise a facially insufficient defamation claim and that news reports about Clayton Hartwig are subject to privilege.

Summary judgment is proper when, "pleadings, depositions, answers to interrogatories, ... together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." F.R.Civ.P. 56(c). After adequate time for discovery, summary judgment should be granted against a party bearing the burden of proof if they fail to make a sufficient showing on an essential element of their case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("There can be 'no issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). The standard for summary judgment mirrors the standard for a directed verdict under F.R.Civ.P. 50(a). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment should be granted if under governing law, there can be but one reasonable conclusion as to the verdict. *Id.*

### A.

In this case, the elements of a tort claim for intentional infliction of emotional distress are governed by Ohio law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Ohio Supreme Court has set forth the elements of a claim of

intentional infliction of emotional distress: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983) (citing the Restatement of the Law 2d, Torts (1965) 71, § 46(1)). In *Yeager*, the Court held that a claim of intentional infliction of emotional distress must allege serious emotional distress. *Id.* at 374, 453 N.E.2d 666. Serious emotional distress causes a normally constituted reasonable person to be unable to cope with mental distress arising from given circumstances. *Paugh v. Hanks*, 6 Ohio St.3d 72, 78, 451 N.E.2d 759 (1983). Examples of serious emotional distress include neurosis, psychosis, chronic depression, or phobia. *Id.*

■ The Plaintiffs baldly assert that, "publication of such extreme and outrageous information has caused them intense and horrific emotional distress, which greatly compounded and impeded the grieving process they were already experiencing due to the tragic death of Clayton Hartwig." Response at 14. No reports of doctors, social workers, psychologists, or other experts are attached to Plaintiffs' exhibits. The affidavits of Earl Hartwig, Evelyn Hartwig, and Kathleen Kubucina do not address any symptoms of emotional distress.[1] Response at Ex. H, I, and J. When Plaintiffs fail to provide evidence on every element of a claim, a jury cannot return a verdict for the Plaintiffs as a matter of law. A complete failure of proof of serious emotional distress, an essential element of an intentional infliction of emotional distress claim, dictates that summary judgment be granted for NBC.

■ "Extreme and outrageous conduct" gives rise to liability when conduct is, "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager*, 6 Ohio St.3d at 374–75, 453 N.E.2d 666. These principles were applied in the case of *Lambert v. Garlo*, 19 Ohio App.3d 295, 484 N.E.2d 260 (1985). In *Lam-

bert*, the trial court granted summary judgment for defendants, The Fostoria Daily Review and the Seneca County Coroner. *Id.* at 296, 484 N.E.2d 260. The Fostoria Daily published the County Coroner's statement to news reporters that "it was as clear as day" that plaintiffs' deceased relative was a drug pusher. *Id.* The court held that summary judgment was proper denying relief on intentional and negligent infliction of emotional distress claims. *Id.* at 299, 484 N.E.2d 260. Unrefuted affidavits demonstrated that news reporters did not know plaintiffs prior to the decedent's accident, had no malicious intent, and published the Coroner's statements in connection with the report of decedent's accident. *Id.* Therefore, publication did not constitute "extreme and outrageous conduct" as a matter of law. *Id.*

> Francis' unrefuted affidavit explains that: In reporting on the Iowa investigation, I simply was doing my job of covering ongoing governmental activities, investigations, and proceedings concerning a matter of considerable public interest and concern. My only purpose was accurately to report the government's allegations and findings, as well as responses to them by Kendall Truitt, the Hartwig family and others … My reporting in no way was directed against the parents and sisters of Clayton Hartwig.

Declaration at 4. As in *Lambert*, the lack of evidence of malicious intent suggests that NBC's conduct does not reach the "extreme and outrageous" level set forth in the *Yeager* and *Lambert* cases.

### B.

■ NBC's argument that Plaintiffs' intentional infliction of emotional distress claim is an attempt to disguise an insufficient defamation claim lacks merit. NBC cites *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) and *Lusby v. Cincinnati Monthly Publishing Corp.*, 17 Media L.Rep. (BNA) 1962, 1965, 1990 WL 75242 (6th Cir.1990) to support an argument that courts should not consider defamation claims disguised as intentional infliction of emotional distress. However, the *Hustler*

---

1. No affidavit of Cynthia Werthmuller was included in Plaintiffs' Exhibits.

and *Lusby* plaintiffs were the subjects of defamation alleged in their cases. In the instant case, Plaintiffs complain of infliction of emotional distress through broadcasts concerning a family member. Under these circumstances, Ohio law recognizes an independent tort of intentional infliction of emotional distress. *Lambert,* 19 Ohio App.3d at 298, 484 N.E.2d 260.

## C.

Finally, NBC asserts common law record and neutral reportage privileges preclude liability on Plaintiffs' claims. The Court need not consider affirmative defenses because the elements of an intentional infliction of emotional distress claim have not been satisfied.

## IV.  CONCLUSION

Plaintiffs failed to produce legally sufficient evidence on elements of the claim of intentional infliction of emotional distress. Therefore, NBC's Motion for Summary Judgment is granted and the Plaintiffs' complaint is dismissed pursuant to F.R.Civ.P. 56.

IT IS SO ORDERED.