# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-CA-01346-SCT

*DOWNTOWN GRILL, INC.*

*v.*

*MICHAEL CONNELL AND TONIA CONNELL,*
*INDIVIDUALLY, AND AS PARENTS AND NEXT*
*FRIENDS OF THEIR MINOR SON, PAUL CONNELL;*
*AND PAUL CONNELL*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/96 |
| TRIAL JUDGE: | HON. R. KENNETH COLEMAN |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | RONALD HENRY PIERCE |
| | S. T. RAYBURN |
| ATTORNEYS FOR APPELLEES: | MICHAEL T. LEWIS |
| | PAULINE SHULER LEWIS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED - 9/17/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/8/98 |

**EN BANC.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Michael Connell and Tonia Connell, individually and as parents and next friends of their minor son, Paul Connell, and Paul Connell (collectively, the "plaintiffs") commenced this action against the Downtown Grill, Inc. (the "Downtown Grill"), a restaurant located on the Square in Oxford, Mississippi, and one of its employees, Chris Gwin. The plaintiffs alleged causes of action for libel and slander, malicious prosecution, intentional infliction of emotional distress, and gross negligence arising out of the arrest of Paul Connell for forgery. Mr. and Mrs. Connell joined in this lawsuit not only on behalf of their son, but also to assert their alleged separate "individual" claims.

¶2. A jury trial began on September 16, 1996, and plaintiffs voluntarily withdrew their claims against Defendant Chris Gwin at the close of the evidence in the trial. On September 17, 1996, the jury returned a verdict for the plaintiffs and against the Downtown Grill in the amount of $40,000.00 in

actual damages and judgment was entered on September 27, 1996. On October 2, 1996, the Downtown Grill filed a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial, which was denied on November 20, 1996. The Downtown Grill filed its Notice of Appeal on December 10, 1996 presenting the issues listed below for consideration.

**I. WHETHER THE LOWER COURT ERRED IN DENYING THE DOWNTOWN GRILL'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL?**

**A. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY GIVING PLAINTIFFS' INSTRUCTION P-2 AND REFUSING THE DOWNTOWN GRILL'S INSTRUCTION D-4 AND D-5 REGARDING THE QUALIFIED PRIVILEGE?**

**B. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY DENYING THE DOWNTOWN GRILL'S MOTION FOR A DIRECTED VERDICT AND/OR A PEREMPTORY INSTRUCTION ON THE INDIVIDUAL CLAIMS OF MICHAEL CONNELL AND TONYA CONNELL (THE PARENTS OF PAUL CONNELL)?**

**C. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY GIVING PLAINTIFFS' INSTRUCTION P-9 OVER THE OBJECTION OF THE DOWNTOWN GRILL?**

**D. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY DENYING THE DOWNTOWN GRILL'S MOTION FOR A DIRECTED VERDICT AND THE DOWNTOWN GRILL'S REQUEST FOR A PEREMPTORY INSTRUCTION ON ALL CLAIMS?**

**II. WHETHER THE LOWER COURT ERRED IN DENYING THE DOWNTOWN GRILL'S MOTION IN LIMINE AND ALLOWING PLAINTIFFS TO OFFER EVIDENCE REGARDING ALLEGATIONS OF UNDERAGE DRINKING?**

<u>**FACTS**</u>

¶3. On or about October 8, 1993, Scott Denton, a University of Mississippi student, filed a report with the University of Mississippi Police Department alleging that three (3) of his personal checks had been stolen. Mr. Denton's report was investigated by Captain Wayne Mills of the University of Mississippi Police Department. During the course of Captain Mills's investigation, Mr. Denton told Captain Mills that one of the checks had been passed at the Downtown Grill. Consequently, Captain Mills went to the Downtown Grill and discussed the matter with Chris Gwin, the bartender on duty when the check was passed. Chris Gwin gave Captain Mills a general description of the person who passed the check.

¶4. Upon discussing the matter further with Captain Mills, Mr. Denton told Captain Mills that he strongly suspected that his roommate, Plaintiff Paul Connell, had stolen the checks. Mr. Denton's suspicion seemed to be fueled in part because of the animosity between himself and his roommate, Paul Connell. As a result of Mr. Denton's and Captain Mills's suspicions regarding Paul Connell's involvement in the forgery, Scott Denton moved out of the room he shared with Paul Connell on or

about October 10, 1993, at the suggestion of Captain Mills. Afterward, Captain Mills compiled a photo spread containing six (6) photographs of young male students, one of which was Paul Connell, and Captain Mills took the photo spread to Chris Gwin to see if he could identify the person who gave him the check. Captain Mills did not take the actual photographs to Chris Gwin, but took photocopies of the photos instead. Chris Gwin told Captain Mills that he did not feel comfortable making an identification and he was really not sure he could because he only saw the person for as long as it took to write the check and Chris Gwin suggested that Captain Mills should talk to the waiters who actually served the table where the person had been seated. But Captain Mills encouraged Chris Gwin to "help him out" and Chris Gwin, by process of elimination, initialed the photograph of the person who he thought looked the most like the person who gave him the check. As it turned out, the photograph Chris Gwin initialed was a photograph of Scott Denton's roommate, Paul Connell.

¶5. As a result of the totality of the information gathered during his investigation, Captain Mills filed an affidavit charging Paul Connell with forgery because 1) as a roommate Paul Connell had access to Scott Denton's checks, 2) there was animosity between Scott Denton and Paul Connell and 3) Chris Gwin initialed the photograph of Paul Connell as being the person who looked the most like the person who gave him the check. Several weeks later, however, another one of Mr. Denton's checks was presented at another business and the suspect, Brent Beisher, was apprehended and ultimately confessed to the forgery at the Downtown Grill as well. Consequently, Captain Mills dropped the charge he filed against Paul Connell. In its brief, the appellant points out that the photograph of Paul Connell and that of the person who ultimately confessed to the crime were so similar that even Captain Mills misidentified the photographs in open court.

¶6. All of the plaintiffs' causes of action allegedly arose out of one act: Chris Gwin's "identification" of Paul Connell as the person who gave him the forged check . However, Chris Gwin merely cooperated in good faith with a police officer who was investigating a criminal complaint filed by someone else, Scott Denton. And the facts support that his only motivation was to assist Captain Mills with his investigation. Chris Gwin never said or did anything that indicated he was acting or was motivated by anything other than a desire to help Captain Mills in his criminal investigation. Captain Mills's investigation was initiated by Scott Denton, not the Downtown Grill, and no one from the Downtown Grill did anything to encourage or pressure Captain Mills to prosecute anyone.

## STANDARD OF REVIEW

¶7. This Court gives "great weight and deference to juries on findings of fact and will not set aside a verdict unless it is against the overwhelming weight of the evidence and credible testimony." *Parker v. Thornton*, 596 So.2d 854, 858 (Miss.1992). Furthermore, according to *Samuels v. Mladineo*, 608 So.2d 1170, 1180 (Miss.1992), "no jury verdict should be set aside lightly; the occasion for doing so should never arise except in rare and unusual cases." *See also* *Hans Constr. Co. v. Drummond.,* 653 So.2d 253, 266 (Miss. 1995). This Court finds that the case *sub judice* is such a "rare and unusual" case. There was **not** sufficient evidence presented at trial to warrant a finding and the awarding of $40,000 in damages against the Downtown Grill. The record contains nothing to indicate that Downtown Grill is guilty of malicious prosecution, libel and slander, intentional infliction of emotional distress or gross negligence. Downtown Grill did no more than any citizen may be called on to do with police authority.

# ANALYSIS

¶8. Prior to discussing the evidence presented in the case at bar, this Court finds it to be clear that "'a citizen has a privilege to start the criminal law into action by complaints to the proper officials so long as one acts either in good faith, i.e., for a legitimate purpose, or with reasonable grounds to believe that the person proceeded against may be guilty of the offense charged'." *Benjamin v. Hooper Elec. Supply Co.,* 568 So. 2d 1182, 1187 (Miss. 1990) (*quoting* Harper, James and Gray, The Law of Torts § 4.1 at 406 (2d. ed 1986)).

¶9. "The law allows a wide latitude for honest action on the part of the citizen who purports to assist public officials in their task of law enforcement." Id. at 1187 (*citing* Harper James and Greg, The Law of Torts § 4.1 at 407; Prosser and Keeton on Torts, § 119 at 871 (5th ed. 1984)). Malicious prosecution is not a favored tort because of a public policy in favor of halting and prosecuting crime and because we hope to enlist all citizens in the effort.

¶10. There are two competing interests in all malicious prosecution cases. The public policy interest in crime prevention insists that private citizens, when aiding law enforcement personnel, ought to be protected against prejudice that is likely to arise from the termination of the prosecution in favor of the accused. *Owens v. Kroger Co.,* 430 So.2d 843, 846 (Miss.1983); *See also* *State, for the Use & Benefit of Foster v. Turner*, 319 So.2d 233, 235 (Miss.1975).

¶11. Equally important is the second interest which protects individuals from being wrongly accused of criminal behavior which results in unjustifiable and oppressive litigation of criminal charges. Consequently, in our orderly society we allow those subjected to criminal proceedings cloaked with malice to recover compensation for their losses. *Owens*, 430 So.2d at 846. *See also* 54 C.J.S. Malicious Prosecution § 4 (1987).

¶12. The test of liability in an action for malicious prosecution is: Was defendant actively instrumental in putting the law in force? In order to sustain the action, it must affirmatively appear as a part of the case of the party demanding damages that the party sought to be charged was the proximate and movant cause of maliciously putting the law in motion, and, if such fact appears, defendant is liable, although he did not actually make or sign the affidavit on which the warrant was issued, or although he was not the prosecutor of record. Mere knowledge of, or acquiescence or consent in, the acts of another is not sufficient to make one liable; in order to impose liability there must be some affirmative action by way of advice, encouragement, pressure, etc., in the institution, or causing the institution, of the prosecution, or in affirmatively encouraging its continuance after it has been instituted. Unsuccessful efforts to secure the institution of proceedings, however malicious or unfounded, are not actionable as malicious prosecution.

¶13. No liability, as for malicious prosecution, attaches merely by reason of testifying as a witness for the prosecution, or by reason of the fact that one's name was indorsed on an indictment or signed to an information or complaint prepared on an independent investigation by the prosecutor. So, also, the mere initialing of a copy of a photograph is not sufficient to subject one to the penalties of a malicious prosecution. The fact that defendant's employee, in an attempt to cooperate with Captain Mills signed his initials and the date on the back of the picture of Michael Connell, where it did not appear that he made any effort to procure the indictment, does not make him liable. *Winters v.*

*Griffis*, 233 Miss. at 102, 101 So.2d 346, 348 (Miss. 1958).

¶14. More to the point on conveying information to prosecutors is the following:

> The question of information laid before prosecuting authorities has arisen in many cases. If the defendant merely states what is believed, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceeding.

W.Page Keeton et al., Prosser and Keeton, on the Law of Torts § 119 at 872-73 (5th ed. 1984).

¶15. This Court addressed instigation in the recent case *Godines v. First Guar. Savs. & Loan Ass'n*, 525 So.2d 1321 (Miss.1988). *Godines* stated that "merely providing accurate information to police may not be instigation, [but] knowingly giving false information may be an attempt to influence the officer's judgment in deciding whether to effect an arrest. This may be enough to hold the informer liable." **Id**. at 1325.

¶16. The Court finds that Gwin provided what he honestly believed to be accurate information to the best of his knowledge. There was nothing in the record to indicate that Gwin was not acting in good faith when supplying information to the police. He did not knowingly misrepresent information to Captain Mills. Therefore, the Court is not convinced that there is even a valid claim of malicious prosecution to be considered in the case now before us.

### I. WHETHER THE LOWER COURT ERRED IN DENYING THE DOWNTOWN GRILL'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FOR A NEW TRIAL?

### A. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY GIVING PLAINTIFFS' INSTRUCTION P-2 AND REFUSING THE DOWNTOWN GRILL'S INSTRUCTION D-4 AND D-5 REGARDING THE QUALIFIED PRIVILEGE?

#### Discussion of the Law

¶17. "Instructions should be tied to the specific facts of the case and when given merely in the abstract, may be grounds for error." *T.K. Stanley, Inc. v. Cason*, 614 So. 2d 942, 952 (Miss. 1992) (*citing* **Estate of Lawler v. Weston**, 451 So. 2d 739, 741 (Miss. 1984) (*citing* **Harkins v. Paschall**, 348 So. 2d 1019, 1023 (Miss. 1977); *Freeze v. Taylor*, 257 So. 2d 509, 511 (Miss. 1972)). This Court further held that, "jury instructions are to be considered as a whole, that they need not be perfect in form or expression, and that, where an ambiguity in one is clarified in (as many as five) others, reversal is not required." *Illinois Cent. Gulf R.R. v. Gibbs*, 600 So. 2d 944, 951 (Miss. 1992) (*citing* **Purina Mills, Inc. v. Moak,** 575 So. 2d 993, 996 (Miss. 1990); *Payne v. Rain Forest Nurseries, Inc.*, 540 So. 2d 35, 40 (Miss. 1989); *Middleton v. Evers,* 515 So. 2d 940, 942 (Miss. 1987)). In the case *sub judice,* the totality of the jury instructions does not present the appropriate law to the jury.

¶18. As a matter of institutional imperative, "our law presumes that jurors follow the trial judge's instructions, as upon their oaths they are obliged to do." *Parker v. Jones County Community Hosp.*,

549 So. 2d 443, 446 (Miss. 1989). We find that the judge in the case at bar erroneously instructed the jury. Therefore, since the jurors are bound to follow the law as instructed, they failed to consider the correct law pertaining to this case.

¶19. "It is a general rule in civil cases that the plaintiff has the duty to ask the court to inform the jury what is necessary to make out the case as charged in the declaration. Moreover, there is no obligation on the part of defendant to request instructions setting out plaintiff's case." *Pulliam v. Ott,* 246 Miss. 739, 745, 150 So. 2d 143, 146 (1963) (*citing McDonough Motor Express, Inc. v. Spiers,* 180 Miss. 78, 176 So. 723 (1937)). The same holds true if it is the defendant appealing the issue of jury instructions to this Court as is the case here. In the case at bar, the defendant attempted to inform the jury as charged in the declaration, but the judge disagreed on the law. We find that the case law pertaining to qualified privilege in communications with law enforcement officers, as discussed below, is perfectly clear. Therefore, the judge was in error.

¶20. The central question to be addressed in the case at bar is, are citizens protected by a qualified privilege for statements made to a law enforcement officer investigating a criminal complaint, **filed by someone else**? The appellant's brief addresses this issue in great detail and points out the following exchange which occurred during the jury instruction phase of the trial in the case *sub judice*.

¶21. Arguing over jury instructions at the trial of this case, plaintiffs argued:

> . . . we don't think in this case that a communication to a police officer is clothed with such privilege . . . . There is just no law that says a miscommunication to a Mississippi police officer is protected from libel or slander.

To the contrary, the principle that a citizen has a qualified privilege to make statements to police officers was recognized by the Mississippi Supreme Court as early as the turn of the century.

> There is the further established rule, founded upon public policy, that communications which would otherwise be defamatory *are protected as privileged if they are made in good faith in the prosecution of any inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing criminal justice.* 36 C.J p. 1264. **_The rule has its application in most cases to inquiries prosecuted or conducted by public officers or their deputies_**. . . .

See also, *Illinois Cent. R.R. v. Wales*, 177 Miss. 875, 885, 171 So. 536, 538, (1937) (emphasis added). However, at the insistence of the plaintiffs, the trial court failed to instruct the jury on the qualified privilege.

¶22. As this Court confirmed in *Stewart v. Southeast Foods, Inc.,* 688 So. 2d 733 (Miss. 1996), "[A]ll proper guard and protection should be drawn around those who, in obedience to the mandates of duty, may be compelled to originate, carry on, aid or assist in a criminal prosecution which may from any cause terminate in favor of the accused." *Stewart,* 688 So.2d at 739 (quoting *State v. Turner*, 319 So.2d 233, 235 (Miss.1975)). This principle results from the fact that "actions for malicious prosecution are regarded by law with jealousy and they ought not to be favored but managed with great caution." *Id*. (*quoting Turner*, 319 So.2d at 235.)

¶23. A qualified privileged communication is one "made in good faith on any subject matter on which the person communicating has an interest or in reference to which he has a duty to protect to a person having a corresponding interest or duty, even though it contained matters, which, without this privilege, would be actionable, and although the duty is not a legal one, but only moral and social duty of imperfect obligation." *J.C. Penney Co. v. Cox,* 246 Miss. 1,7-8, 148 So. 2d 679, 682 (1963). This Court finds that there is an unspoken civic duty to cooperate with police officers which is all Chris Gwin was doing in this case.

¶24. We also held in *Cox* that privilege arises when, "evidence establishes circumstances which the law says supported a duty to make a statement of fact honestly believed to be true. A privileged communication is a statement made in good faith with an honest intent to perform a duty, on an occasion of privilege." *Id.* at 8, 148 So.2d at 683. There is no dispute in the case at bar that Chris Gwin identified the wrong person in the photo lineup. However, he made an honest good faith attempt to perform his civic duty and that, in this Court's view, calls for application of a qualified privilege.

¶25. Appellant's brief argues that over the objection of the defendant, the trial judge issued the following instruction to the jury absent any instruction pertaining to qualified privilege.

### P-2

If you find from a preponderance of the evidence in this case that the Defendant Gwin told Detective Wayne Mills either orally or in writing that:

1. Paul Connell wrote a forged check to the Downtown Grill on September 29, 1993 or substantially similar words, and

2. these words accused the Plaintiff Paul Connell of committing a major crime (forgery)

Then your verdict shall be for the Plaintiff.

¶26. Appellant argues that this instruction misstates the applicable law by failing to instruct the jury that Chris Gwin was entitled to qualified privilege and the burden was also on the plaintiffs to prove the statements were made with malice.

¶27. This Court had held in *Tipps Tool Co. v. Holifield*, 218 Miss. 670 67 So. 2d 609, (1953), that urging the trial court to grant an instruction which misstated the law was reversible error. In *Tipps*, the plaintiff was wrongfully accused of stealing his employer's property. In spite of objection, the trial judge issued the following instruction:

The court instructs the jury for the plaintiff, that the statement made by one person of another that he has stolen anything is slanderous per se, and is actionable, if spoken in the presence of one or more persons, and if you believe from a preponderance of the evidence in this case that such a statement was spoken of plaintiff by the defendants and in the presence of one or more persons, then you must find for the plaintiff.

*Id*. at 689, 67 So.2d at 617. Holding this instruction constituted reversible error, the court reasoned:

The case made by the plaintiff's proof was a case of qualified privilege; and the instruction did not embody a correct statement of the law applicable in cases of that kind. "Malice is the gist-- that is, the main point whereon rests an action for libel or slander." Newell on Slander and Libel, Fourth Ed., Sec. 278, p. 316. Where the occasion is one of qualified privilege malice is not implied; and the burden of proving the existence of malice is cast upon the person claiming to have been defamed. . . . **In the above mentioned instruction malice was not referred to. The jury was simply told that if they believed that McDill and Lowery made the statements alleged to have been made by them in the plaintiff's declaration in the presence of one or more persons, the jury must return a verdict for the plaintiff. The instruction meant that the jury might disregard the ...fact that the occasion on which the statements were uttered was an occasion of qualified privilege . . . . The instruction was such as to mislead the jury entirely as to the law of the case; and it cannot be said that the error was cured by the granting of other instructions to the defendants.**

*Tipps Tool Co.,* 218 So.2d at 689-90, 67 So.2d at 617-18 (emphasis added).

¶28. The instruction issued in *Tipps* is directly on point with the instruction given in the case at bar. In *Tipps*, this Court found a new trial was necessary. Chris Gwin's statement to Captain Mills was one of qualified privilege and as such malice was not implied. The burden was on the plaintiff to prove Chris Gwin acted with malice. The Downtown Grill requested instruction D-5 which would have instructed the jury on the law of qualified privilege, but this instruction was refused pursuant to plaintiff's objection.

¶29. In *Louisiana Oil Corp. v. Renno*, 173 Miss. 609, 157 So. 705 (1934), the Mississippi Supreme Court outlined the factors which give rise to the qualified privilege:

A communication made in good faith and on a subject matter in which the person making it has an interest, or in reference to which he has a duty, is privileged if made to a person or persons having a corresponding interest or duty, even though it contains matter which without this privilege would be slanderous, provided the statement is made without malice and in good faith.

. . .

**There are certain occasions on which a man is entitled to state what he believes to be the truth about another, and in doing so public policy requires that he shall be protected, provided he makes the statement honestly and not for any indirect or wrong motive.** Such occasions are called occasions of qualified privilege, for the reason that the protection is not absolute, but depends entirely upon the honesty of purpose with which the statement is made. Among such statements is one made on a subject-matter in which the person making it, and the person to whom it is made, have a legitimate common interest. . . . The underlying principle is public policy.

*Louisiana Oil Corp. v. Renno*, 173 Miss. at 618-19, 157 So. at 708 (emphasis added).

¶30. It is well settled case law in the State of Mississippi that a new trial should be granted when the jury has been improperly instructed on the law of the case. *Tipps Tool Co.*, 218 Miss. at 690, 67 So. 2d at 617-18. *See also* ***McKinzie v. Coon***, 656 So. 2d 134, 142 (Miss. 1995); ***Bell v. City of Bay St.***

*Louis*, 467 So. 2d 657, 663-65 (Miss. 1985). By granting instruction P-2 and refusing D-4 and D-5, the jury was instructed that if it believed that Chirs Gwin positively identified Paul Connell to Captain Mills then it **must** return a verdict for the plaintiffs absent any consideration for the existence of malice.

¶31. This Court in remanding for a new trial in *Tipps* made the following statement regarding the instructions given to the jury - instructions which did not allow for application of qualified privilege:

> The instruction meant that the jury might disregard... the fact that the occasion on which the statements were uttered was an occasion of qualified privilege . . . . The instruction was such as to mislead the jury entirely as to the law of the case; and it cannot be said that the error was cured by the granting of other instructions to the defendants.

*Tipps Tool Co.*, 218 Miss. at 689-90, 67 So.2d at 617-18.

¶32. The instruction which called for a new trial in *Tipps* is almost identical to the instruction given in the case *sub judice*. By giving P-2 and refusing D-4 and D-5, the trial court committed reversible error. This Court therefore finds that due to the fact that the case law in this State unequivocally states that Chris Gwin is entitled to qualified privilege, the case should be reversed.

### B. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY DENYING THE DOWNTOWN GRILL'S MOTION FOR A DIRECTED VERDICT AND/OR A PEREMPTORY INSTRUCTION ON THE INDIVIDUAL CLAIMS OF MICHAEL CONNELL AND TONIA CONNELL (THE PARENTS OF PAUL CONNELL)?

¶33. This claim by appellants is based on the denial of a directed verdict on the issue that the parents of Paul Connell in no way suffered damages for the claims of malicious prosecution, libel and slander, intentional infliction of emotional distress, and gross negligence. The Downtown Grill also requested a peremptory instruction, D-2, as to the individual claims of Michael and Tonia Connell, but that request was also denied. The Downtown Grill also objected to several of plaintiff's instructions which lumped the claims of Michael and Tonia Connell together with the claims of Paul Connell such that the jury was unable to determine which damages were being sought for which causes of action.

¶34. The Downtown Grill correctly argues that "it is self-evident that no one can state a claim for libel and slander, malicious prosecution, intentional infliction of emotional distress and/or gross negligence under these facts except Paul Connell". Because all of these causes of action allegedly arose out of Chris Gwin's "identification" of Paul Connell as the person who gave him the forged check, again it seems self-evident that Michael and Tonia Connell did not have any such claims in their **individual** capacities. The plaintiffs never discuss the individual claims of Paul's parents beyond being worried about their son - something all parents go through. They make no argument that they were libeled and slandered, maliciously prosecuted or treated in a grossly negligent manner. We assume their claim is for intentional infliction of emotional distress. This Court understands that the parents of Paul Connell reacted the same way any parent would upon learning their son has been put into jail. However, we do not conclude that the duties of being a parent entitle Michael and Tonia Connell to any damages for worrying about their son. This Court realizes what a *Pandora's Box* would be opened if we allowed both parents and their children to recover for alleged wrongs against the children.

¶35. We held in ***Butler v. Chrestman,*** 264 So. 2d 812, 817 (Miss. 1972) (*quoting **Fowler Butane Gas Co. v. Varner***, 244 Miss. 130, 156, 141 So.2d 226, 236 (1962)), that

> "...if a minor sustains personal injuries under such circumstances of wilfulness, aggravation, or oppression as to justify an imposition of exemplary or punitive damages, upon the wrongdoer, the right of recovery thereof is in the child, and that there can be no recovery of the item by the parent in his own right." It is also said: " . . . that the measure of damages in a parent's action for injuries to a minor child, other than a case of seduction, is the actual damage which the plaintiff has suffered..."

If this Court is unwilling to allow parents to recover damages for the severe personal injury of their child, we certainly will not allow recovery of damages by a parent for the alleged malicious prosecution of one's minor child. The proper plaintiff, therefore, in the case *sub judice* is Paul Connell and not Michael and Tonia Connell. *See also **Zucker v. County of Rockland***, 489 N.Y.S.2d 308 (N.Y. App. Div. 1985) (parents sued a newspaper to recover damages for defamation after an article allegedly defamed their son.) The court in ***Zucker*** affirmed the trial court's dismissal of the parents' claim for defamation, reasoning that the parents could not recover against the newspaper for an article which "neither mentioned by name nor otherwise identified" the parents. ***Id***. at 309. The only way Paul and Tonia Connell became involved in the case now before this Court is through their parental duties. They, in no way, were otherwise involved in the identification and arrest of Paul Connell.

¶36. The appellant cites much case law from other jurisdictions on the subject of parents rights to recover for wrongs to their children. In the Ohio case of ***Lambert v. Garlo***, 484 N.E.2d 260 (Ohio. Ct. App.1985), the court dismissed the **individual** claims of the parents and brother of a person who was allegedly defamed since the publication did not concern them. Affirming the trial court's dismissal of the parents' claim for libel, the court concluded:

> However, plaintiffs [the parents] were not named in the article, no reference, directly or indirectly, was made concerning them or linking them to the situation and the only reasonable conclusion is that the plaintiffs [the parents] were not directly injured by the statements.
>
> . . .
>
> . . .to be actionable it must be shown that the libel was published about or concerning them. . . or that defendant had the intention of injuring the relative and was aware of the relative's relationship to the person defamed. See, also, 50 American Jurisprudence 2d (1970) 834, Libel and Slander, Section 311.

***Lambert v. Garlo***, 484 N.E.2d at 263. *See also **Rushing v. Bosse***, 652 So.2d 869, 875 (Fla.Dist. Ct. App.1995) (grandparents who were not subject to the proceeding may not maintain a malicious prosecution claim in their individual capacities); ***Justice v. Belo Broadcasting Corp.***, 472 F.Supp. 145, 148 (N.D.Tex.1979) (parents could not maintain an action for defamation where broadcast made no reference to parents who were not identified in any way); ***Beresky v. Teschner***, 381 N.E.2d 979, 982 (Ill. App. Ct.1978) (parents could not maintain actions for libel, intentional infliction of emotional distress and invasion of privacy where articles did not refer to parents).

¶37. Downtown Grill's motion for a directed verdict, request for a peremptory instruction and/or motion for a judgment notwithstanding the verdict should have been granted with regard to the individual claims of the parents. Therefore, this case is reversed.

### C. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY GIVING PLAINTIFFS' INSTRUCTION P-9 OVER THE OBJECTION OF THE DOWNTOWN GRILL?

¶38. Appellant next argues that instruction P-9 was given to the jury over defendant's objection.

### P-9

You are instructed that just compensation is a decision to be made by the jury. Your discretion as to the measure of damages is wide, but not unlimited, and you may not act arbitrarily. Exercise your discretion as the amount of damages reasonably, intelligently and in harmony with the evidence of the case and the Court's instructions. The damages for personal injury cannot be assessed by any fixed rule, but you are the sole judges as to the measure of damages in this case.

Should your verdict be for the Plaintiffs in this case, you may consider the following factors to determine the amount of damages to award as may be shown by a preponderance of the evidence:

1. The type of injuries to the Plaintiffs, if any, and their duration;

2. Past, present and future emotional pain and suffering and resulting mental anguish, if any,

3. Reasonable and necessary expenses which were proximately caused by Defendants' wrongdoing.

If you find from a preponderance of the evidence in this case that Plaintiffs have sustained actual damages as a proximate result of the Defendants' false accusation that Paul Connell committed forgery then the Plaintiffs are entitled to a verdict in an amount which will reasonably compensate the Plaintiffs for their loss sustained. Such damages are called compensatory or actual damages and are awarded for the purpose of making the Plaintiffs whole again insofar as a money verdict can accomplish that purpose. (emphasis added).

¶39. The Downtown Grill argues that they objected to this instruction on two separate grounds. First, "it instructs the jury that they may compensate Michael and Tonia Connell for damages they suffered, even emotional damages, when they have no claims in their individual capacities. Secondly, it refers to 'Defendant's false accusations' in such a manner as to instruct the jury that Chris Gwin in fact accused Paul Connell of forging the check, when this was a hotly contested issue of fact." This Court agrees that defendant's objection should have been sustained.

¶40. The plaintiffs' own attorney acknowledged that ". . . we may have to refine a damage instruction to explain to the jury exactly which damage the parents are seeking versus the son." There was never an instruction given to clarify the damages the parents were entitled to recover. It appears that the

jury's award contains some amount intended for the pain and suffering of the parents. The parents were not entitled to any recovery.

¶41. By giving instruction P-9 without any clarification, the trial court committed reversible error.

> **D. WHETHER PREJUDICIAL ERROR WAS COMMITTED BY DENYING THE DOWNTOWN GRILL'S MOTION FOR A DIRECTED VERDICT AND THE DOWNTOWN GRILL'S REQUEST FOR A PEREMPTORY INSTRUCTION ON ALL CLAIMS?**

¶42. This Court held in ***Edwards v. Patrick***, 469 So. 2d 92 (Miss. 1985), that in reviewing whether or not a directed verdict is appropriate, we consider the following:

> "'all evidence with reasonable inferences flowing therefrom must be accepted as true in favor of the party against whom the peremptory instruction is requested, all evidence in conflict therewith is disregarded, and, if such evidence is sufficient to support a verdict for the party against whom the peremptory instruction is requested, then it should be denied.'"

**Id**. at 95 (*quoting **Barkley v. Miller Transporters, Inc.,*** 450 So. 2d 416, 419 (Miss. 1984)).

¶43. Appellant argues that all of plaintiffs' causes of action arose out of one act, Chris Gwin's identification of Paul Connell as the person who wrote the check. The duty is on the plaintiffs to prove Chris Gwin acted out of malice. There is no evidence contained within the record that Chris Gwin acted out of malice in any way. The evidence establishes that Chris Gwin was motivated by his interest to assist Captain Mills with his investigation.

¶44. The appellant argues that taking all evidence in the light most favorable to the plaintiffs, there is no evidence from which reasonable jurors could conclude that Chris Gwin acted with malice. We agree. The Downtown Grill's motion for a directed verdict should have been granted. This Court opines that the failure to so grant the motion for directed verdict requires reversal on this issue.

> **II. WHETHER THE LOWER COURT ERRED IN DENYING THE DOWNTOWN GRILL'S MOTION IN LIMINE AND ALLOWING PLAINTIFFS TO OFFER EVIDENCE REGARDING ALLEGATIONS OF UNDERAGE DRINKING?**

¶45. Because this issue is not a necessary issue in the case before this Court, we will only briefly address it. The Downtown Grill filed a motion in limine seeking to prohibit plaintiffs from mentioning, offering evidence, or soliciting testimony regarding allegations of the Downtown Grill allowing minors to consume alcoholic beverages. The motion was denied.

¶46. The appellant presents the following argument in its brief. The fact that the person who later confessed to this crime was a minor who was allegedly drinking alcohol in the Downtown Grill on the night in question was **not** relevant to **any** issue presented by this case, as is best evidenced by the fact that the plaintiffs did not include this allegation in their jury instructions. Such evidence was irrelevant and furthermore inadmissible under Rules 404 (improper character evidence of a party) and 608 (improper character evidence of a witness) of the Mississippi Rules of Evidence. Alternatively, any probative value of this evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury and therefore inadmissible under Rule 403. *Compare*

*Holladay v. Tutor*, 465 So.2d 337, 338 (Miss.1985) (court reversed and remanded for new trial where evidence that a box of marijuana and quaaludes were found in defendant's car was not relevant and the only purpose for which it was offered was to prejudice the jury); *Pope v. McGee*, 403 So.2d 1269, 1271 (Miss.1981) (evidence that two six packs of beer and an unidentified white powder were found in defendant's automobile shed no light on proximate cause of collision and was highly prejudicial; this evidence is not to be admitted on retrial).

¶47. There is no argument made to the contrary. Appellees only argue that the Downtown Grill did not report the forged check because it was afraid the police would find out the young man who eventually confessed to being the person who actually forged the check was underage. This Court finds that this argument is nothing more than speculation on the part of the plaintiffs in this case. There is no proof contained within the record that this proposal by plaintiffs had any truth whatsoever. Speculation does not fall within the duties of this Court in interpreting the laws of our State. Further, this issue has no place in a case claiming malicious prosecution.

## CONCLUSION

¶48. The trial court issued jury instructions which misstated the law. Chris Gwin was clearly entitled to qualified privilege. Michael and Tonia Connell were not entitled to recover damages for alleged wrongs to their son. Further, we are doubtful that a claim for malicious prosecution was available for Paul Connell. The Downtown Grill did not initiate the criminal proceedings against Paul Connell. Rather, its employee simply cooperated with Captain Mills after being encouraged to do so by Captain Mills. There is absolutely no evidence of malice on the part of Chris Gwin. Malice is a necessary element in proving a claim of malicious prosecution.

¶49. This Court is not quick to reverse a jury verdict. However, this is a "rare and unusual" case causing this Court to reverse the jury's finding.

¶50. **REVERSED AND RENDERED.**

**PRATHER, C.J., ROBERTS, SMITH AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J. MILLS, J., NOT PARTICIPATING.**


**McRAE, JUSTICE, DISSENTING:**


¶51. I disagree with the majority's determination that the circuit court erred in not granting the Downtown Grill's motion for a directed verdict. In light of its disposition of the case, however, the extensive discussion of the other issues raised in the appeal is unnecessary and to some extent, incorrect. In particular, the majority has gone astray in its unfounded declaration that statements made to law enforcement officers carry a qualified privilege. No such privilege exists in our common law and the Mississippi legislature has not seen fit to create one by statute. Further, we have not adopted any such privilege in our Rules of Evidence. The circuit court, therefore, properly refused to instruct the jury on the qualified privilege.

¶52. The majority states that such a privilege has been recognized by this Court since the turn of the century. It relies on *Bigner v. Hodges,* 82 Miss. 215, 33 So. 980 (1903) for the proposition that "[t]here is the further established rule, founded upon public policy, that communications which otherwise would be defamatory are protected as privileged if they are made in good faith in the prosecution of any inquiry regarding a crime which has been committed, and for the purpose of detecting and bringing criminal justice." This quote actually comes from the case of *Illinois Central Railroad Co. v. Wales*, 177 Miss. 875, 171 So. 536 (1937), where the appellee sued the railroad for slander after its special agent, investigating the theft of a large quantity of brass, asked several individuals, "'Don't you think that Wales (meaning plaintiff) was into that brass stealing?'" 177 Miss. at 886-887. The Court compared the agent's inquiry to that of the man who asks the neighbor of one whom suspects has stolen his horse, "Do you think, or don't you think, John Doe was into this horse stealing?" *Id.* at 885. It found that any such privilege extended "to *inquiries* prosecuted or conducted by public officers or their deputies or authorized agents, but it also covers inquiries by private persons, or their authorized agents, in respect to a matter in which they have a direct personal interest," as in the case of the horse owner. *Id.* at 885-886. The privilege clearly insulates from charges of slander only one who is making inquiry into a crime, not any citizen who happens to respond to questioning about an incident. As the opinion in *Wales* expressly states, "Whether the privilege goes any further than to those above mentioned we need not consider and we express no opinion , because not within the present case." *Id*. at 886, 171 So. at 538. It is, therefore, an incorrect statement of the law to state that *Bigner* and *Wales* provide authority for the proposition that a qualified privilege protects all those giving information to authorities during the course of a criminal investigation or that such a privilege even exists.

¶53. The majority further builds its case for a qualified privilege on *Stewart v. Southeast Foods, Inc.*, 688 So. 2d 733 (Miss. 1996) and *J.C. Penney Co., v. Cox*, 246 Miss. 1, 148 So. 679 (1963). As distinguished from the case *sub judice*, both of those cases address malicious prosecution charges brought against shop keepers or merchants by parties accused of shoplifting. However, Miss. Code Ann. § 97-23-95 (1994) expressly provides for the detention of individuals suspected of shoplifting for questioning without incurring civil liability. The statute states that

> Such questioning of a person by a merchant, merchant's employee or peace or police officer shall not render such merchant, merchant's employee or peace or police officer civilly liable for slander, false arrest, false imprisonment, malicious prosecution, unlawful detention or otherwise in any case where such merchant, merchant's employee or peace or police officer acts in good faith and upon reasonable grounds to believe that the person questioned is committing or attempting to commit the crime of shoplifting.

§ 97-23-95. The privilege conferred by the statute, however, is limited to merchants and their employees investigating incidents of shoplifting; it does not extend to other crimes. Moreover, as in *Wales*, it is the *inquiry* made on behalf of the interested or injured party that is protected, not any statements that happen to be made during the course of investigation by those questioned.

¶54. Finally, the majority relies on *Tipps Tool Co. v. Holifield*, 218 Miss. 670, 67 So. 2d 609 (1953) and *Louisiana Oil Corp. v. Renno,* 173 Miss. 609, 157 So. 705 (1934). As distinguished from the case *sub judice,* those cases both address situations where terminated employees brought suit against their formers employers for statements made regarding the reasons for their terminations. In *Renno*,

the oil company advised its other service station managers at a meeting that Renno, another station keeper, had been discharged for bootlegging, in violation of state and federal law. The Court found that the statement was covered by a qualified privilege since it "was properly a matter for consideration and discussion at the meeting. It pertained to the success of the business in hand and concerned all present." *Renno,* 173 Miss. at 619, 157 So. at 708. In *Holifield*, where the appellee was accused of stealing from his employer, the judgment in his favor was reversed because the jury was not properly instructed on the element of malice he was required to prove in light of his former employer's qualified privilege.

¶55. No Mississippi cases, statutes or rules of evidence support the majority's position that any assistance provided by private citizens in a criminal investigation is protected by a qualified privilege. Further, no other jurisdictions have made such a pronouncement. Only Tennessee has acknowledged a conditional "public interest privilege" to encourage cooperation with the investigation of a criminal matter. *Pate v. Service Merchandise Co.,* 959 S.W. 2d 569 (Tenn. Ct. App.1996). The determination that any such privilege exists in Mississippi is best left with the legislature.

¶56. We can only wonder why the majority has chosen to discuss the other issues raised after rendering the case on the basis of "qualified privilege." Accordingly, I dissent.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**