928 So.2d 226 (2006)
Mamie STEPHENS, Appellant
v.
KEMCO FOODS, INC. d/b/a Sunfower Food Store, # 9077 and Wylis Kemp, Individually and in his Official Capacity as Owner and Operator of Sunflower Food Store, # 9077, Appellees.
No. 2003-CA-02528-COA.
Court of Appeals of Mississippi.
May 2, 2006.
*229 Dion Jeffery Shanley, Oxford, attorney for appellant.
L. Bradley Dillard, Jackson, attorney for appellees.
EN BANC.
ISHEE, J., for the Court.
¶ 1. On February 21, 2001, Mamie Stephens brought suit in the Circuit Court of Lafayette County against Kemco Foods, Inc. d/b/a Sunflower Food Store ("Sunflower") and Wylis Kemp, both individually and in his capacity as owner/operator of Sunflower Food Store, for negligence, false imprisonment, false arrest, slander, and defamation. Wylis Kemp was subsequently dismissed by agreement. At trial, the trial judge granted a directed verdict in favor of Sunflower on the slander and defamation claims, and the jury returned a verdict in favor of Stephens for $300 on the negligence claim. The jury returned a verdict in favor of Sunflower on the false arrest and false imprisonment claims. Stephens's motion for a new trial was denied. Aggrieved by the verdict and ruling, Stephens appeals. Finding error, we reverse and remand in part and affirm in part.

FACTS
¶ 2. On June 3, 1995, Sunflower's store in Okolona, Mississippi accepted a check in the amount of $54.77 drawn on Stephens's account at Sunburst Bank in Oxford, Mississippi. Sunflower kept no records as to which of its employees accepted the check. The check, which was signed with Stephens's name, was later returned to Sunflower dishonored and marked "unable to locate," because the account had been closed.[1] Following the return of the check, Sunflower inexplicably lost the check for approximately five years. When it found the check in August of 2000, it mailed a form letter to the address listed on the check demanding satisfaction and threatening prosecution if Stephens did not pay the amount dishonored. Sunflower never received any response to the letter, which was returned marked "undeliverable." As a result, Sunflower instigated criminal proceedings against Stephens.
¶ 3. Police approached Stephens at her place of employment in Lafayette County on September 29, 2000, and served her the arrest warrant in front of her employer, co-workers, and her employer's customers. The officers agreed to let Stephens finish her shift, and she subsequently surrendered herself. A bond was set which Stephens could not pay at the time, but her niece subsequently helped her to meet it, securing her release.
¶ 4. Stephens traveled to Okolona, Mississippi for her court date, and there informed *230 the judge that she did not write the check and had no knowledge of who could have done so. Stephens stated that, prior to her court date, she had never been to Okolona, Mississippi. Because of this testimony and the fact Sunflower did not attend, the judge dismissed the charges.
¶ 5. Stephens brought suit against Sunflower and Wylis Kemp in the Circuit Court of Lafayette County for negligence, false imprisonment, false arrest, slander, and defamation.[2] Two days prior to trial, Stephens moved to amend the pleadings to conform to the tort of malicious prosecution, but the trial judge denied the motion. At trial, it was undisputed that Stephens had lived at the same location for twelve years, and that no one had contacted her to ask about the 1995 check. Sunflower's demand letter was sent to the address on the check, a rural route address, but Lafayette County had since changed its address system to 911 addresses, causing the letter to be returned as undeliverable for lack of sufficient address. Wylis Kemp stated at trial that, because the letter came back as undeliverable, it was clear to Sunflower that Stephens had not received it. There was no evidence at trial that Sunflower made any attempt to telephone Stephens concerning the check.
¶ 6. At the close of Stephens's proof, Sunflower moved for directed verdict on the slander and defamation claims on the grounds that it had acted reasonably and in good faith in initiating criminal proceedings concerning the dishonored check. The trial court granted Sunflower's motion, and the defamation and slander claims were dismissed. On Stephens's negligence claim, the jury returned a verdict for $300. On the claims for false arrest and false imprisonment, the jury returned a verdict in favor of Sunflower. Stephens's motion for a new trial was denied. Aggrieved by verdict and rulings, Stephens now appeals, asserting: (1) that the trial court erred in denying Stephens's motion to amend the pleadings to conform to the evidence of the tort of malicious prosecution; (2) that Sunflower's use of peremptory challenges under the circumstances of the case denied Stephens's rights to equal protection of the laws as guaranteed by the Mississippi and federal constitutions; (3) that the trial court erred by allowing Sunflower to present to the jury an incomplete picture of its financial characteristics by preventing Stephens from probing the issue on cross; (4) that the trial court erred in granting in part Sunflower's motion for directed verdict, dismissing Stephens's claims for slander and defamation; and (5) that the trial court erred in granting Sunflower's jury instructions to interject the issue of comparable fault.

ISSUES AND ANALYSIS

I. Whether the trial court erred in denying Stephens's motion to amend the pleadings to conform to the evidence of the tort of malicious prosecution.
¶ 7. Stephens first asserts that the trial judge erred by denying her motion to amend the pleadings to conform to the evidence of the tort of malicious prosecution. She contends that Sunflower would in no way have been prejudiced by allowing the amendment.
¶ 8. In reviewing a trial court's grant or denial of a motion to amend pleadings, this Court uses an abuse of discretion standard. Harris v. Miss. Valley State Univ., 873 So.2d 970, 990(¶ 64) *231 (Miss.2004). Rule 15(b) of the Mississippi Rules of Civil Procedure states:
Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of trial of these issues. If evidence is objected to at trial on the ground that it is not within the issues made the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the maintaining of the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. The court is to be liberal in granting permission to amend when justice so requires.
The comment to Rule 15(b) further states that, "if the objecting party can show prejudice, the court may grant a continuance to meet the evidence, but should again allow amendment of the pleadings." However, "[a]pplications to amend the pleadings should be prompt and not the result of lack of diligence." Harris, 873 So.2d at 991(¶ 64). Additionally, applications to amend pleadings need not be granted if such amendment would be futile. See Simmons v. Thompson Machinery of Mississippi, Inc., 631 So.2d 798, 800 (Miss. 1994).
¶ 9. For a plaintiff to prevail on a malicious prosecution claim, she must prove by the preponderance of the evidence the following elements: (1) institution of a proceeding; (2) by, or at the insistence of the defendant; (3) termination of the proceeding in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage resulting from the prosecution. Condere Corp. v. Moon, 880 So.2d 1038, 1042(¶ 13) (Miss.2004).
¶ 10. We see nothing in the record to indicate that Sunflower would be actually prejudiced as a result of allowing the amendment of the pleadings to allow the claim of malicious prosecution. Rule 15(b) is clear in instructing trial judges to liberally grant motions to amend pleadings so long as the objecting party would not be prejudiced. The comment to the Rule further reinforces this point, stating that, even in the case of prejudice, a judge should grant a continuance in order for the opposing party to meet the evidence, but nevertheless should allow the amendment. The trial judge enunciated no reason as to why the motion was denied other than citing that it was made two days prior to trial and had not previously been pled. As such, we find that the trial court abused its discretion in denying Stephens's motion to amend the pleadings to conform to the evidence. Accordingly, we reverse and remand.

II. Whether Sunflower's use of peremptory challenges under the circumstances of the case denied Stephens's rights to equal protection of the laws as guaranteed by the Mississippi and federal constitutions.
¶ 11. Stephens next contends that her equal protection rights were violated when Sunflower exercised all of its peremptory challenges on African Americans. In Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), *232 the United States Supreme Court held that racial discrimination through the use of peremptory strikes is prohibited. To satisfy the first of the three prongs set forth in Batson, a party objecting to a peremptory challenge must first make a prima facie showing that race was the basis for the peremptory strike. Id. at 96-97, 106 S.Ct. 1712; McFarland v. State, 707 So.2d 166, 171(¶ 14) (Miss.1997). This shifts the burden to the party exercising the peremptory strike to give a race-neutral reason for the strike. Batson, 476 U.S. at 97-98, 106 S.Ct. 1712; McFarland, 707 So.2d at 171(¶ 14). If the objecting party wishes to challenge the proffered race-neutral reason as pretextual, it must do so at the trial court level or it waives the right to do so on appeal. Mack v. State, 650 So.2d 1289, 1297 (Miss.1994). The trial court must then determine whether the party objecting to the peremptory strike has successfully proven the existence of racial discrimination in the use of the peremptory strike. Batson, 476 U.S. at 98, 106 S.Ct. 1712; McFarland, 707 So.2d at 171(¶ 14).
¶ 12. We give great deference to the trial court's determination of whether the reason given for the peremptory strike was truly race-neutral under the circumstances. McFarland, 707 So.2d at 172(¶ 16). A trial court's ruling on a Batson challenge will not be overturned unless "clearly erroneous or against the overwhelming weight of the evidence." Lynch v. State, 877 So.2d 1254, 1270(¶ 46) (Miss. 2004) (citations omitted).
¶ 13. In the case sub judice, Stephens satisfied the first Batson prong by showing that she was African American and that Sunflower exercised its peremptory challenges exclusively to excuse other African Americans, thus raising an inference of purposefully striking them because of race. See id. at 1270-71(¶ 48). The burden then switched to Sunflower to articulate race-neutral reasoning for its peremptory challenges. As to four African American jurors on which Sunflower exercised its peremptory challenges, Sunflower's proffered race-neutral explanations were: the first juror struck, Floyd Brooks, "knew Mrs. Stephens. Knew all of her family"; the second, Sara Pegues, knew Stephens and often saw her at a mutual friend's home; the third, Charolette Brewer, had a relationship with one of Stephens's relatives; and the fourth, Janice Hardin, works with Sarina Morgan, Stephens's niece, who accompanied her to the police department on the day the arrest warrant was served. Stephens offered no evidence that these reasons were pretextual.
¶ 14. Stephens argues that the tightly knit nature of the racial group in the venue makes the race-neutral explanations effectively irrebuttable. However, this argument does nothing to rebut the legal framework set forth by Batson. There is no right guaranteeing that a person will have a "petit jury composed in whole or in part of persons of [her] own race." Batson, 476 U.S. at 85, 106 S.Ct. 1712 (quoting Strauder v. West Virginia, 100 U.S. 303, 305, 25 L.Ed. 664 (1880)).
¶ 15. Because there is no evidence of pretext in the record, we find that the decision of the trial judge concerning Stephens's Batson challenges was neither clearly erroneous nor against the overwhelming weight of the evidence. Accordingly, we find this assignment of error to be without merit.

III. Whether the trial court erred by allowing Sunflower to present to the jury an incomplete picture of its financial characteristics by preventing Stephens from probing the issue on cross.
¶ 16. At trial, following questioning on direct examination by counsel for *233 Sunflower pertaining to the "size" of Kemco, Inc. (Sunflower's parent company), Stephens sought to elicit testimony from Sunflower concerning its size, as evidenced by its gross receipts. The trial judge, however, disallowed Stephens from questioning Sunflower concerning its gross receipts. Stephens now asserts that the trial judge erred by disallowing the questioning. Stephens contends that allowing counsel for Sunflower to question the witness concerning Kemco's size while not allowing her to question the witness concerning Kemco's gross receipts allowed counsel for Sunflower to portray "Sunflower as victim."
¶ 17. However, Stephens fails to cite any authority for her argument other than Mississippi Rule of Evidence 401, which defines which evidence is relevant.[3] "It is the duty of an appellant to provide authority in support of an assertion of error." Jones v. Howell, 827 So.2d 691, 702(¶ 40) (Miss.2002). Where a party fails to cite relevant authority supporting an issue, this Court will not review the issue. Beene v. State, 910 So.2d 1152, 1154(¶ 7) (Miss.Ct.App.2005).

IV. Whether the trial court erred in granting in part Sunflower's motion for directed verdict, dismissing Stephens's claims for slander and defamation.
¶ 18. In reviewing a trial court's grant of a motion for directed verdict, this Court
consider[s] the evidence in the light most favorable to the [non-moving party], giving that party the benefit of all favorable inference that may reasonably be drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the [moving party] that reasonable [jurors] could not have arrived at a contrary verdict, [we are] required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required.
Owens v. Miss. Farm Bureau Cas. Ins. Co., 910 So.2d 1065, 1073(¶ 29) (Miss.2005) (quoting 3M Co. v. Johnson, 895 So.2d 151, 160(¶ 30) (Miss.2005); Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss. 1992)).
¶ 19. Stephens asserts that the trial court erred in granting Sunflower's motion for directed verdict with regard to her defamation and slander claims. The trial court's reasoning in granting directed verdict on these issues was that it found Sunflower had acted reasonably and in good faith in initiating the criminal proceedings against Stephens.
¶ 20. To successfully establish a claim for defamation, the following elements must be proven by a plaintiff: (1) a false and defamatory statement regarding the plaintiff; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either action ability of statement irrespective of special harm or existence of special harm caused by publication of the defamatory statement. Armistead v. Minor, 815 So.2d 1189, 1193(¶ 7) (Miss.2002).
¶ 21. However, there exists a qualified privilege in Mississippi to instigate criminal proceedings against a person *234 by complaints to the proper officials so long as the person doing so acts for a legitimate purpose, with reasonable grounds to believe that the person against whom he is initiating criminal proceedings may in fact be guilty of the offense charged. Downtown Grill, Inc. v. Connell, 721 So.2d 1113, 1117(¶ 8) (Miss.1998). It is in questioning the existence of this qualified privilege in the case sub judice that the malicious prosecution claim becomes relevant, because Mississippi law does "allow those subjected to criminal proceedings cloaked with malice to recover compensation for their losses." Id. at (¶ 11). "In analyzing probable cause and malice, courts look to objective facts as to the former and the subjective state of mind as to the latter." Owens v. Kroger Co., 430 So.2d 843, 846 (Miss.1983). When the facts are disputed, it is a jury question as to whether or not probable cause existed to initiate the proceedings. Id. When not in dispute, the court must determine whether or not such probable cause existed. Id. "Malice, on the other hand, is a mental state ... [and] may be proved by circumstantial evidence, or the jury may infer malice from the facts of the case." Id.
¶ 22. In the case sub judice, the defamation and slander claims are inextricably intertwined with the malicious prosecution claim. The existence of malice in a malicious prosecution claim is a question for the jury. Because the existence of qualified privilege with regard to the defamation and slander claims is dependent upon the success of the malicious prosecution claim, directed verdict was not proper. As such, viewing the evidence in the light most favorable to Stephens and allowing all reasonable inferences therefrom, we find that the trial court erred in granting Sunflower's motion for directed verdict as to these claims. Accordingly, we reverse and remand.

V. Whether the trial court erred in granting Sunflower's jury instructions to interject the issue of comparable fault.
¶ 23. In reviewing a trial court's grant or denial of jury instructions, this Court views the instructions as a whole rather than in isolation. Rushing v. State, 911 So.2d 526, 537(¶ 24) (Miss.2005). "[A] trial court may refuse an instruction which misstates the law, is fairly addressed in another instruction, or has no evidentiary foundation." Davis v. State, 909 So.2d 749, 752(¶ 11) (Miss.Ct.App.2005) (citing Poole v. State, 826 So.2d 1222, 1230(¶ 27) (Miss.2002)). If the jury instructions, read as a whole, "fairly announce the law of the case and create no injustice, no reversible error will be found." Johnson v. State, 823 So.2d 582, 584(¶ 4) (Miss.Ct.App.2002).
¶ 24. Stephens asserts that jury instruction D5, which instructed the jury that they were permitted to consider comparable fault, was granted in error. Mississippi Code Annotated § 85-5-7 (Rev. 1999) allows for allocation of fault in civil actions based on fault. However, as both parties concede, § 85-5-7 does not allow for allocation of fault in cases involving intentional torts. As such, we find that the instruction did not fairly announce the law of the case, and the trial judge granted it in error. Compounded with the other errors in this case, allowing this instruction to stand would create an injustice. Consequently, we reverse and remand.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS REVERSED AND REMANDED IN PART AND AFFIRMED IN PART. ALL COSTS OF THIS APPEAL *235 ARE ASSESSED TO THE APPELLEES.
KING, C.J., LEE and MYERS, P.JJ. AND ROBERTS, J., CONCUR. IRVING, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY SOUTHWICK AND CHANDLER, JJ. BARNES, J., NOT PARTICIPATING.
GRIFFIS, J., Concurring in part and dissenting in part:
¶ 26. For the following reasons, I concur in part and dissent in part.

I. Whether the trial court erred in denying Stephens's motion to amend the pleadings to conform to the evidence of the tort of malicious prosecution.
¶ 27. The majority concludes that the trial court abused its discretion when it denied Stephens's motion to conform to the evidence. I disagree.
¶ 28. On September 25, 2003,[4] Stephens filed her motion to amend the pleadings to conform to the evidence adduced in this action. She asked for leave to amend and add claims for (1) malicious prosecution, and (2) punitive damages. The majority is correct to note that amendments made to conform to the evidence are subject to Rule 15(b) of the Mississippi Rules of Civil Procedure. However, at the hearing, held after the jury was sworn in on the morning of the trial, September 29, 2003, the trial court determined that it was a motion to amend and not a motion to conform to the evidence, because no evidence had been tendered.
¶ 29. In my opinion, the trial court properly considered the motion to amend under Rule 15(a). The trial court granted the motion to amend to allow the punitive damage claim based on the fact that Sunflower's counsel admitted that the punitive damage claim was not a surprise. The trial court denied the motion to amend to allow the malicious prosecution claim because the court did not find that it had been previously been pled and considered it to be untimely. Rule 15 vests this decision within the discretion of the circuit judge. Here, based on the record, I cannot find that the circuit judge abused his discretion. See Natural Mother v. Paternal Aunt, 583 So.2d 614, 617 (Miss.1991) (leave to amend two days before trial should be denied if the opposing party who is ready for trial would be prejudiced); Marchbanks v. Borum, 806 So.2d 278, 286(¶ 22) (Miss.Ct.App.2001). Accordingly, I would affirm on this issue.

II. Whether Sunflower's use of peremptory challenges under the circumstances of this case denied Stephens's rights to equal protection of the laws as guaranteed by the Mississippi and federal constitutions.
¶ 30. I concur with the majority and find no merit to this issue.

III. Whether the trial court erred by allowing Sunflower to present to the jury an incomplete picture of its financial characteristics by preventing Stephens from probing the issue on cross.
¶ 31. I concur with the majority on the outcome of this issue, but I disagree with its analysis. Indeed, Stephens cited us to Rule 401 of the Mississippi Rules of Evidence. *236 On cross-examination of Wylis Kemp, Stephens' counsel asked the following questions:
Q. Do you, your wife and your son own all the shares?
A. Yes.
Q. You also said that [Sunflower] is a small company not like Kroger, a family business.
A. That's correct.
Q. Now, would you please tell us what you specifically mean by a small company. What is what are the gross receipts for Kemco in a year for instance?
Defense Counsel: Your Honor, I'm going to object to this to [sic] issue of relevance.
Stephens's Counsel: Your Honor, he broached the subject.
Defense Counsel: Well we didn't get into gross receipts. We asked about the size of the business, Your Honor.
Court: I'm going to assume he meant by the number of owners. I'm going to sustain the objection. Ask you to move on.
¶ 32. I am of the opinion that it is sufficient for Stephens to cite us to the Mississippi Rules of Evidence to support an issue that relates to the relevance of certain evidence. Indeed, an analysis of other cases interpreting similar situations would have been helpful. Nevertheless, I am of the opinion that it gets beyond the waiver of the issue on appeal.
¶ 33. Rule 401 defines "Relevant Evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Stephens's argument fails to explain how evidence of Sunflower's gross receipts could affect a fact of consequence in this case. Hence, I find no error in the circuit judge's ruling.

IV. Whether the trial court erred in granting in part Sunflower's motion for directed verdict, dismissing Stephens's claims for slander and defamation.
¶ 34. Stephens argues that there was sufficient evidence to present a jury question of whether the communication made by Sunflower to the Chickasaw County Justice Court Clerk defamed or slandered Stephens. She also claims that although the circuit judge found that a qualified privilege applied, Stephens exceeded the scope of this privilege. The evidence indicated that there was no communication to a third party other than the justice court clerk. The clerk was given the affidavit of the crime. There was evidence of probable cause to suspect the crime of false pretense was committed. The bad check statute provides that "[i]f any notice is returned undelivered to the sender after such notice was mailed to the address printed on the check, draft or order, or to the address given by the accused at the time of issuance of the instrument, such return shall be prima facie evidence of the maker's or drawer's intent to defraud." Miss.Code Ann § 97-19-57 (Rev.2004).
¶ 35. Since I am of the opinion that trial court was correct, I find no error on this issue and would affirm.

V. Whether the trial court erred in granting in part Sunflower's jury instructions to interject the issue of comparable fault.
¶ 36. I disagree with the majority. In the complaint and the pretrial order, Stephens indicated that she asserted a claim for negligence. Jury instructions D-3, D-4 and D-5 instructed the jury on negligence *237 and comparative negligence. I find no error in granting these instructions.
¶ 37. I would affirm the jury's verdict.
SOUTHWICK AND CHANDLER, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] Stephens confirmed that the account had been closed prior to the writing of the check on June 3, 1995 because she and her husband had separated, and she did not want him attempting to use the account.
[2] Wylis Kemp was dismissed according to agreement of the parties before the case proceeded to trial.
[3] Mississippi Rule of Evidence 401 defines relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
[4] This was on a Thursday. The trial was to begin the following Monday, September 29, 2003. Thus, the motion to amend was made less than two business day before the trial.